MARTIN LIPPMAN,
Complainant below, Appellant,

*vs.*

KEHOE STENOGRAPH COMPANY,
Defendant below, Appellee.

*Supreme Court, on appeal, Jan.* 21, 1918.

While a court of equity in actions between a corporation and its stockholders will not ordinarily take jurisdiction for the purpose of determining the legality of the election or the qualifications of directors of private corporations or of the sufficiency of notice of their meetings or of the orderly procedure of their meetings, yet where these questions arise collaterally in an action by a stockholder to restrain the illegal forfeiture of his stock, and upon independent ground the stockholder is entitled to equitable relief, such questions will be determined by a court of equity.

Under such principles, in a suit to restrain an alleged illegal forfeiture of corporate stock, the question of the legality of the meeting of the board of directors held without the State of the corporation's domicile is a proper one for determination by the Chancellor.

Though a statute of the corporation's domicile required at least one director to be a resident of the State, a stockholder seeking an injunction to restrain an alleged illegal forfeiture of his stock by action of the board of directors cannot question the legality of the action of the directors on the ground that no one of them was a resident of the State, for that is a matter solely between the state and the corporation of which a court of equity in such proceedings cannot take cognizance.

Where no directors' meeting in fact was had, purported minutes of such meeting prepared and signed by some of the directors are of no force.

Where a director at the request of one acting for the corporation assigned his stock certificate in blank but no transfer was entered on the corporate books, and it was not contemplated either by the director or the company that he had lost his status as a stockholder so as to be ineligible, such director was still eligible to act in that capacity.

Where less than four months after their election, as directors, such persons acquired the requisite three shares of stock which under the statute then in force was a necessary qualification for a director, they become qualified directors, though not shareholders at the time of election; the statute making no provision as to ownership of stock at the time of election.

Despite *Code* 1915, § 1946, which is part of the General Corporation Law, providing that directors may hold their meetings outside the State if the by-laws so provide, a directors' meeting held outside the State is valid under *Section* 1917, providing that corporations shall have the powers given by their charters or certificates so far as necessary to the objects set forth therein, and *Section* 1919, providing that the certificate of incorporation may contain any provision for the regulation of the business of the corporation not contrary to law, where the certificate of incorporation provided that directors' meetings might be held outside the State, though there was no by-law so providing.

Where substantially everything contained in the minutes of a directors' meeting was proven by the testimony of witnesses independent of the minutes, the admission of the minutes themselves, if erroneous, was harmless.

APPEAL FROM COURT OF CHANCERY. The appellant sought an injunction in the court below to enjoin the sale and transfer of three shares of stock of the Kehoe Stenograph Company, ownership of which was claimed by the appellant. An answer was filed to the bill and supplemental bill in the court below, executed by Julius Strauss, as president, and Abraham M. Ackerman, as secretary, admitting the allegations of the bill and supplemental bill. Thereafter a petition was filed purporting to be that of the Kehoe Stenograph Company, executed by H. C. Dunlap as president thereof, asking that the answer filed by Strauss and Ackerman on behalf of the company be stricken from the files and that leave be granted to file as the answer of the company an answer submitted with the petition. After a hearing on the petition, the answer executed by Strauss and Ackerman was

stricken from the files and leave given to file as the answer of the company, the answer executed by Dunlap. (See *ante p.* 80.)

After a full hearing in the court below the bill of complaint was dismissed (see *ante p.* 190), and thereupon an appeal was taken from the decree of the Chancellor.

Argued before BOYCE, CONRAD, RICE and HEISEL, J. J.

*James I. Boyce,* for the appellant.

*James M. Tunnell,* and with him *John J. O'Connor,* of New York City, for the appellee.

HEISEL, J. (delivering the opinion of the majority of the court). The appellant, Martin Lippman, on August 14, 1914, filed in the Court of Chancery in New Castle County, a bill of complaint against the Kehoe Stenograph Company, a corporation of this State, the appellee, the object of which was to restrain the appellee, its officers, agents, attorneys and factors from selling or disposing of, or attempting to sell or dispose of, three shares of the capital stock of said Kehoe Stenograph Company claimed to be owned by Lippman, and which had been advertised for sale by certain persons claiming to act as the officers of the Kehoe Stenograph Company, because the par value of said shares had never been paid to the company.

On the same day a rule issued out of the Court of Chancery against the appellee to show cause why an injunction should not be granted as prayed for, and a restraining order issued to prevent the sale of the shares of stock mentioned in the advertisement recited in the bill of complaint.

On August 18, 1914, an answer to the bill of complaint signed Kehoe Stenograph Company, by Julius Strauss, president and attested by Abraham M. Ackerman as secretary was filed, which answer admitted the averments of the bill of complaint, and averred that it was a bogus and unlawful board of directors, who, pretending to act as the board of directors of the Kehoe Stenograph Company caused the advertisement for the sale of stock to be inserted in the paper as set out in said bill.

On August 31, 1914, appellant filed a supplemental bill setting forth that notwithstanding the restraining order of August 14, 1914, and the answer of the company signed by Julius Strauss as president and Ackerman as secretary, the shares of stock of appellant were sold, or pretended to be sold, on the eighteenth day of August, and prayed for a restraining order prohibiting the transfer of said shares of stock upon the books of the company. On the same day the restraining order issued.

To this supplemental bill an answer was also filed by the company signed by Strauss, as president, and Ackerman as secretary on September 11, 1914, in which the allegations of the supplemental bill are admitted and it further avers that the said pretended sale was not made by the company, but by certain persons, pretending to act as directors of the company; and that said sale was not authorized, sanctioned or approved by said company.

Thus the cause stood until November 19, 1914, when a petition signed, Kehoe Stenograph Company, by H. C. Dunlap president, was filed. This petition, after reciting the several proceedings in Chancery substantially as hereinbefore stated, denied that Strauss was president and Ackerman, secretary of the Kehoe Stenograph Company, and that the answers heretofore filed by them pretending to be the answers of that company were the true answers of the company; and averred that H. C. Dunlap was president and G. H. West was the secretary of the company; that petitioner had no knowledge of the proceeding heretofore had in this case until September 3, 1914; and that the petitioner would, if permitted to file an answer, deny many of the allegations of both bills filed by the appellant, and prayed that it be allowed to file answers to these bills, and that the answers heretofore filed by Kehoe Stenograph Company by Strauss as president and Ackerman as secretary be stricken from the record.

On March 22, 1915, an answer to this petition signed by Strauss, president, and Ackerman, secretary, was filed. Thus was raised a collateral issue by two factions, each claiming to have been the *de jure* board of directors of the Kehoe Stenograph Company during the months of August and September, 1914.

On December 11, 1915, after the filing of affidavits and argument, the Chancellor ordered the answers theretofore filed by the Stenograph Company by Strauss as president to be stricken from the record and the proposed answer of the company signed by Dunlap as president to be filed.

The answer signed by Dunlap as president was thereupon filed, and after the taking of evidence orally, the Chancellor, on the fourth day of October, 1916, declined to grant the injunction prayed for and dismissed the bill with costs on the complainant.

From this decree the appellant has taken his appeal, alleging five assignments of error: That the Chancellor erred:

First. In dismissing the bill of complaint.

Second. In not granting the relief prayed for by the complainant in his original and supplemental bills.

Third. In not declaring the pretended forfeiture of the said complainant's stock null and void.

Fourth. In not striking from the files the answer, purporting to be the answer of the Kehoe Stenograph Company, signed by H. C. Dunlap purporting to be the president of the said company.

Fifth. In not re-instating the answer of the Kehoe Stenograph Company signed by Julius Strauss as president of the said company.

The determination of the questions thus raised depends upon the validity of two meetings held, or claimed to have been held, by different groups of persons claiming to be directors of the company, one on October 29, 1913, and the other on January 21, 1914.

If the meeting of October 29th was a valid meeting of the directors of the company then the meeting of January 21st, was invalid, and all subsequent meetings of the board headed by Dunlap, including the meeting at which the three shares of stock of the appellant were forfeited were invalid. If, however, the meeting of October 29th was invalid and the meeting of January 21st, was valid, then all the subsequent meetings of the board headed by Dunlap were valid, and the three shares of stock of appellant forfeited by that board,

were properly forfeited, and there was no error in dismissing the bill.

The reasons urged by appellant why the meeting of January 21st, was invalid are:

First, there was not a quorum of directors present, because those who had been elected were not qualified to serve, either, because they were not stockholders when elected or had become disqualified before that meeting by assigning their stock.

Second, without authority the meeting was held outside the State of Delaware, and

Third, because none of the alleged board of directors was a resident of the State of Delaware.

Counsel for appellee contended that none of these reasons can properly be urged in an action by a stockholder in Chancery in an effort to enjoin a corporation acting through a *de facto* board of directors from forfeiting his stock for non-payment of the amount due thereon. That *quo warranto* is the proper and only action by which such questions can be determined, citing 32 *Cyc.* 1426; 10 *Cyc.* 755-758, 520; 32 *Cyc.* 1415; 7 *Ruling Case Law*, §§ 83, 396, 423, 425; *Hayes v. Burns*, 25 *App. D. C.* 242; 4 *Ann. Cas.* 704; *Sherman v. Clark*, 4 *Nev.* 138, 97 *Am. Dec.* 516; *St. Luke's Church v. Mathews*, 4 *Desaus*, (*S. C.*) 578, 6 *Am. Dec.* 619; *Mickles v. Rochester City Bank*, 11 *Paige* (*N. Y.*) 118, 42 *Am. Dec.* 103; *Chubb v. Upton*, 95 *U. S.* 665, 24 *L. Ed.* 523; *Cayuga Lake R. R. Co. v. Kyle*, 64 *N. Y.* 185; *Buffalo & Allegheny R. Co. v. Cary*, 26 *N. Y.* 75; *Geneva Mineral Spring Co. v. Coursey*, 45 *App. Div.* 268, 275, 61 *N. Y. Supp.* 98; *Williams v. D. L. & W. R. Co.*, 255 *Pa. St.* 133, 99 *Atl.* 477.

In reply to this appellant contends that he is entitled to relief, if it can be shown that his stock was forfeited by other than a *de jure* board of directors and that the reasons urged by him against the validity of the meeting of the board on January 21, 1914, can properly be urged and considered by the Chancellor in this action. Citing in support of this contention the following: *Thompson on Corporations*, (*2d Ed.*) §§ 4607, 3750; *Garden G. U. Q. Min. Co. v. McLister*, 1 *L. R. App. Cas.* 39;

*Hart v. Clarke*, 6 *De G.*, *M. & G.* 232; *Sweeny v. Smith*, *L. R.* 7 *Eq.* 324; *Norman v. Mitchell*, 5 *De G. M. & G.* 648; *Johnston v. Jones*, 23 *N. J. Eq.* 216; *Cook on Corporations*, (7th Ed.) § 134; *Mitchell v. Vermont Copper Min. Co.*, 67 *N. Y.* 280; *Dewing v. Perdicaries*, 96 *U. S.* 193, 24 *L. Ed.* 654; *Raisch v. M., K. & T. Oil Co.*, 7 *Cal. App.* 667, 95 *Pac.* 662; *Moses, et al., v. Tompkins*, 84 *Ala.* 613, 4 *South.* 763.

The general principle that may be adduced from these authorities is, that while a court of equity in actions between a corporation and its stockholders, will not ordinarily take jurisdiction for the purpose of determining the legality of the election, or the qualifications of directors of private corporations, or the sufficiency of notice of their meeting or the orderly procedure. of their meeting; yet when these questions arise collaterally in an action by a stockholder to restrain the illegal forfeiture of his stock, where upon independent ground the stockholder is entitled to equitable relief, such questions will be determined by a court of equity.

The primary object in this case was to restrain the illegal sale of property of the appellant, that is, his stock in this company, and not to determine the election or qualifications of the directors of the company or the proper and orderly manner in which their meetings were conducted, but these questions having arisen collaterally, can be determined.

Applying this general principle to the fact in this case, we have no difficulty in finding that the Chancellor had authority to determine the questions raised by the first objection of appellant's counsel, that is to pass upon the election and qualifications of the directors who held the meeting of January 21st.

The second objection to this meeting, which was that it was held without the State and without authority for so doing, while probably broader than the general principle before announced, nevertheless was a proper question for the consideration of the Chancellor. The authorities above cited in cases touching the meetings of directors are confined to the proper notice of meetings when notice is required, or the regularity of the proceedings of the meetings, but it would seem that the

reasons which apply to those cases would apply equally well to this.

Appellant's third reason for claiming the invalidity of this meeting has nothing to do with the election or qualification of any particular director or any meeting of directors, but charges that no member of the board of directors at the time the meeting was held was a resident of this State. No claim is here made that any particular one of the directors who took part in that meeting was not fully qualified, and properly elected a member of the board. So that the question here presented is entirely outside the general principle heretofore announced; and none of the cases cited by counsel touch it in any way. It does not appear for what reason the Legislature saw fit to provide that one of the directors of every corporation created under the General Corporation Law should be a resident of this State. The reason naturally suggested is that it was for the purpose of providing a means whereby service of process might be had by leaving a copy at a convenient place within the State, and thus be able to have such corporations always subject to the jurisdiction of the courts; and notwithstanding it was otherwise provided that process could be served in that manner, nevertheless this seems most likely to be the purpose to be accomplished. If it was for this purpose or for any other purpose touching only the relations of the State and the corporation, as this does, and not affecting the qualifications of individual directors, then whether or not any particular corporation had no director residing within the State was a matter solely between the State and such corporation, and could only be raised by the State in a proper proceeding between it and the corporation so offending and could not be raised in any proceeding between a corporation and its stockholders.

We are of opinion that appellant's third objection to the January 21st meeting cannot be raised in this case.

We will now consider the meeting of October 29th, and appellant's first and second reasons urged against the validity of the meeting of January 21st.

The Kehoe Stenograph Company was incorporated under the General Incorporation Laws of this State by certificate of

incorporation dated October 6, 1913, and recorded October 9, 1913. The signers of this certificate and the original subscribers to the capital stock were R. Y. Slater, Abraham M. Ackerman and J. Merrick Horn. Slater having subscribed for four shares and Ackerman and Horn each for three shares. Horn and the duly constituted attorney for the other two incorporators and subscribers met on the ninth of October, 1913, and organized by the selection of a chairman and a secretary of the meeting. The paper showing subscriptions to the capital stock, four shares to Slater and three each to Ackerman and Horn aggregating the minimum amount allowed by law for organization was approved, as likewise was the certificate of incorporation. An agent was selected to keep the office and books required by law. Authority was given to the directors to issue stock up to the amount authorized by the certificate of incorporation. The directors were also empowered to purchase property and issue full paid stock in payment therefor. Then an assignment dated October 9, 1913, whereby Horn assigned his three shares of stock to Erasmus B. Waples was presented and approved. An election of directors was then held and R. Y. Slater, Abraham M. Ackerman, H. C. Dunlap, Ashley L. Biedler, W. J. Kehoe and Erasmus B. Waples were elected directors to hold office until their successors should be elected. The meeting then adjourned without transacting any other business. The Chancellor affirmed the validity of this meeting, and neither side takes exception thereto. This meeting did not adopt by-laws. The certificate of incorporation provided that the board of directors should have that power.

On October 29th, R. Y. Slater and Ackerman, two of the directors elected at the meeting of October 9th, called at the office of the company in the City of Wilmington for the purpose of amending the charter of the company, and holding the first meeting of the board of directors, but upon being informed that they could not under existing circumstances hold a valid directors' meeting, did not in fact organize or hold such meeting, and after remaining in the office for a few minutes left for New York. Two or three days after, in the City of New York

Slater and Ackerman, prepared minutes purporting to be the minutes of a meeting in Wilmington on the twenty-ninth, which were afterwards initialed and approved by Slater, Ackerman and Waples as the true minutes of that meeting. There was considerable evidence of notice and waiver of notice, and argument about its effect upon the validity of the alleged meeting of October 29th, which we think unnecessary to review here.

If there was in fact no meeting of the directors, on the twenty-ninth, then the questions of notice or waiver of notice of such meeting became immaterial, and notwithstanding what subsequent writings purporting to be minutes of such meeting may falsely state, there was in fact no meeting and consequently no action by directors. From the evidence there can be no doubt that no meeting was in fact organized or held by Slater and Ackerman on October 29th, as directors of the Stenograph Company, and that those actions and proceedings set forth in certain writings purporting to be the minutes of such a meeting, never in fact occurred. There remains as to this meeting then, only the further question as to who may challenge such proceedings.

It will be remembered that at the meeting of October 9th, Slater, Ackerman, Waples, Dunlap, Biedler and Kehoe were elected directors. The minutes of the pretended meeting of October 29th, were later approved by Slater, Ackerman and Waples endorsing their initials upon each page of the minutes, which appellant claims estops them from denying the verity of such minutes, and further that Dunlap, Biedler and Kehoe not being stockholders or subscribers to the capital stock of the company before election, their election as directors on October 9th was invalid, and therefore, they were in no position to object.

Being satisfied for reasons that will later appear in this opinion when the validity of the meeting of January 21st, is considered, that Dunlap, Biedler and Kehoe were duly elected directors and entitled to qualify as such within a reasonable time, and were in the position to object, it is unnecessary to pass upon the effect of the action of Slater, Ackerman and

Waples in approving the minutes of the alleged meeting of October 29th.

The first reason urged against the meeting of January 21st is, that there was not a quorum of directors present.

There were present Slater, Waples, Biedler and Dunlap. Appellant admits Slater was qualified, he being one of the original subscribers to the stock, but claims that Waples was disqualified, because he had assigned his three shares of stock about the middle of November, 1913, and therefore was not a holder of three shares of stock in his own right as required by law, before the Act approved March 20, 1917 (29 *Del. Laws*, *c.* 113), repealing such requirement. Waples had received by assignment dated October 9, 1914, from Horn one of the incorporators, three shares of the capital stock of the company, and about the middle of the same month executed an assignment of it, in blank, and sent it to Ackerman. The Chancellor found that:

"It appears clearly from the testimony that upon the request of Ackerman, acting for the company and not individually, Waples about the middle of October, 1913, signed a blank transfer of the three shares of the company theretofore issued to him, and sent it by mail to Ackerman pursuant to the request, and no transfer of it on the books of the company was in fact made before January 21, 1914; and that neither Waples, or any officer of the company, before January 21, 1914, considered that in so doing Waples had disqualified himself to be and act as a director, of the company. Waples so stated explicitly, and by giving Waples notice of meetings subsequent to January 21, 1914, the officers of the company evinced the same view. * *. *

"Certainly no person connected with the company as stockholder or officer, contemplated that Waples had terminated all interest in the company as stockholder, for all of them regarded him as the only stockholder resident in Delaware, and as the only person who could comply with the statute requiring that at least one of the stockholders be a resident of the State of Delaware." *Ante p.* 190, 198, 98 *Atl.* 943, 946.

There can be no doubt from the evidence that the blank assignment executed by Waples was not intended by him, or by anyone else connected with the company, to have the effect of transferring the stock to some one else and disqualifying Waples as a director, or affecting his relation as

a stockholder in any manner whatever, until after January 21, 1914.

We are, therefore, of the opinion that the Chancellor did not err in holding that Waples was not disqualified from acting as director at the meeting of January 21, 1914.

Appellant also claims there was not a quorum present at this meeting because Biedler and Dunlap were not qualified to act as directors not being stockholders or subscribers to the stock before or at the time of their election at the meeting of October 9th.

The better and prevailing opinion on this question, in the absence of express statutory provision, is, that a director need not be a holder of any shares at the time of his election, but that it will be sufficient if he qualifies himself by becoming a holder of the requisite number of shares before he enters upon the office of director.

The statute in force at that time 21 *Del. Laws, c.* 273, § 20 (but since amended, *Rev. Code,* 1915, §1923) provides that:

"The business of every corporation organized under the provisions of this chapter shall be managed by a board of not less than three directors, except as hereinafter provided; each of whom shall own in his own right not less than three shares of capital stock."

This law does not expressly require a person to be a stockholder at the time of his election as director, therefore the prevailing opinion as just stated would apply; but before such person could participate in the management of the corporation as director it was necessary for him to meet the required qualification of owning three shares of stock. Of course such qualification must be made within a reasonable time, and what would be a reasonable time, would depend upon the facts and circumstances of each case. In this case Dunlap and Biedler were elected on October 9, 1913, and the meeting of January 21, 1914, was the first meeting of the directors after their election; at which meeting they appeared and qualified by subscribing and paying for the necessary number of shares of stock before participating in the meeting. We think under

the circumstances of this case they qualified within a reasonable time.

There was therefore no error in the holding of the Chancellor:

"That so far as the qualifications of those who participate in the meeting were concerned, this was the first valid meeting of those persons elected on October 9, 1913, as directors, and the only valid meeting for the organization of the directors so named, and that those acting as such were qualified to so act."

Appellant's second reason urged against the validity of the meeting of January 21st, is:

"Because, if the by-laws of October 29th were invalid, the company had no by-laws and the meeting could not be held outside the State of Delaware."

This objection is based upon *Section* 1946 *of the Code,* which provides as follows:

"In all cases after the first meeting of the incorporators, where it is not otherwise provided by the by-laws, the meetings of stockholders of every corporation shall be held at its principal office in this State. The stockholders and directors may, however, hold their meetings and have an office or offices outside of this State, if the by-laws so provide."

Appellee replies to this by citing paragraph F. of the certificate of incorporation of the Stenograph Company, and *Section* 3 and *paragraph* 8 of *Section* 5 of the general incorporation act. (*Sections* 1917 and 1919, *Code of* 1915).

Paragraph F. of the certificate of incorporation is as follows:

"The stockholders and directors shall have power to hold their meetings and keep the books, documents and papers of this corporation outside of the State of Delaware, and at such places as may be from time to time designated by the by-laws or by resolution of the stockholders or directors; except as otherwise required by the laws of the State of Delaware."

*Section* 3 of the General Incorporation Act (*Code,* § 1917) provides in part as follows:

"In addition to the powers enumerated in the second section of this Chapter, every corporation, its officers, directors and stockholders, shall possess and exercise all the powers and privileges contained in this Chapter, and the powers expressly given in its charter or in its certificate under which it was incorporated, so far as the same are necessary or convenient to the attainment of the objects set forth in such charter or certificate of incorporation," etc.

Paragraph ·8 of *section* 5 (*Code*, §1919) provides:

"The ·certificate of incorporation may also contain any provision which the incorporators may choose to insert for the regulation of the business and for the conduct of the affairs of the corporation, and any provisions creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class of the stockholders; provided, such provisions are not contrary to the laws of this State."

We see no conflict between these several provisions of the statute. They are meant to meet different situations. Under *section* 1946 the directors may hold meetings out of the State, even if such power is not granted specifically in the certificate of incorporation, if the by-laws so provide, but it in no way suggests or indicates that to be the only way by which meeting may be held outside the State. To be able to hold such meeting outside the State, if the by-laws so provide, is one of the ordinary powers and privileges contained in the corporation chapter, but *section* 3 provides that the directors shall possess not only the powers and privileges contained in that chapter, but also the powers expressly given in its charter or certificate of incorporation so far as they are necessary and convenient to attain the object set forth in such certificate of incorporation. Certainly such provision is broad enough to cover paragraph F. of the certificate of incorporation and is not in conflict with *section* 1946.

During the course of the trial the minutes of the meeting of January 21st were admitted in evidence over the objection of counsel for appellant to which exceptoin was taken. An examination of the record clearly discloses that substantially everything contained in the minutes was also proved by the testimony of witnesses independent of the record, so that even

though the minutes should not have been admitted and upon this we express no opinion, it was harmless error.

We are, therefore, of the opinion that the Chancellor committed no error in dismissing the bill of complaint, and direct that a decree be entered accordingly.

Boyce, J., dissenting: The specific issue raised by the pleadings and the assignments of error is whether the shares of stock of the Kehoe Stenograph Company, the respondent below, held by the complainant below, were legally forfeited. The determination of this question depends upon whether the forfeiture was made by a *de jure* board of directors of the company. This latter question in turn involves collaterally and incidentally the legality of the meeting and the election thereat of the board of directors by the Dunlap faction, which had come into existence, on January 21, 1914.

In view of the conclusion reached by the majority of the court, a review of the testimony for findings of fact warranted by the record, or the consideration of any other meeting than that of January 21, 1914, is of no special value here. Therefore, it is unnecessary that I should say more than is contained in the following statements:

There is considerable testimony in the record with regard to certain arrangements between certain persons of the contending factions of the respondent below, which is immaterial and irrelevant, and is not evidential of the fact in issue.

The minutes and books of the Dunlap faction were self-serving and inadmissible on the issue raised. Likewise the examination of these minutes in aid of testimony with regard to matters contained therein was objectionable.

The testimony of R. Y. Slater discloses so many inconsistencies that its value is greatly affected; and that of Waples is inexplicable. This comment is made independently of opposing testimony.

On and after the organization meeting of the incorporators, October 9, 1913, the legality of which is conceded, R. Y. Slater and Ackerman, two of the three original subscribers of stock,

and Waples, the assignee of Horn, the remaining subscriber, constituted the body corporate of the respondent below. Whatever may be said of the meeting of October 29, 1913, and of any subsequent ratification thereof these persons then constituted the body corporate, and their record of the minutes of the meeting initialed and signed by them, bound them *inter sese*. If, however, there was no *de jure* board of directors of the respondent corporation prior to January 21, 1914, then the meeting of that date, held by the Dunlap faction, did not create a *de jure* board of directors; for Waples was not at that time a stockholder or qualified director. R. Y. Slater was the only stockholder and qualified director at that meeting, and he was without authority to hold a valid meeting, or power to elect other persons for directors, whether legally qualified therefor, or not. If the by-laws of October 29, 1913, were not the by-laws of the corporation, binding upon Slater, Ackerman and Waples, then there were no by-laws authorizing the meeting of January 21, 1914, to be held outside of the State.

I do not concur in certain findings of fact or in the interpretation of certain provisions of the general incorporation act by the court below, or by the majority of this court.

I am of the opinion, upon the facts and the law applicable thereto, that the Kehoe Stenograph Company, the respondent below, did not have a *de jure* board of directors on July 27, 1914, when the alleged officers representing the Dunlap faction of the company advertised the stock of the complainant below for sale; and that the forfeiture of his stock was illegal, and is a nullity.

I am constrained to the conclusion that the decree of the court below should be reversed.