Henry N. DuBois, complainant-respondent,

*v.*

Century Cement Products Company et al., defendants-appellants.

[Submitted October term, 1935.   Decided January 31st, 1936.]

Messrs. *Insley, Vreeland & Decker (Mr. Hamilton Cross)*, for the respondent.

Messrs. *McCarter & English (Mr. Conover English)*, for the appellant Charles Edison.

*Messrs. Whiting & Moore (Mr. Borden D. Whiting)*, for the appellant Percy Ingalls.

*Messrs. Breslin & Breslin (Mr. John J. Breslin, Jr.)*, for the appellant Daniel Rentschler.

The opinion of the court was delivered by

CASE, J.

The decree appealed from finds that the appellants Charles Edison, Percy Ingalls and Daniel Rentschler, with others, were directors of Century Cement Products Company, a domestic corporation, from March 19th, 1923, down to and including November 28th, 1934, the date of the decree; that since March 19th, 1923, the said directors had acted as trustees for the benefit of complainant and other stockholders of the corporation; that funds had come into the hands of the directors sufficient to pay all of the debts of the corporation and, in addition, to pay the preferred stockholders of the corporation, of whom the complainant is one, and orders the directors, jointly and severally, to pay unto the complainant the sum of $3,164 with interest and costs, as well as to pay certain allowances to the solicitors of the complainant and to the special master who heard the matter on reference.

The decree follows in general the allegations of the bill filed by the complainant on behalf of himself as a stockholder and of such other stockholders as might join, which charged that the company was incorporated February 9th, 1923; that complainant became a preferred stockholder on March 19th, 1923; that the charter was forfeited for non-payment of state taxes on January 31st, 1927; that the corporation then ceased to do business; that the officers of the corporation had since then been under the management of the directors as trustees for liquidation of assets; that the debts of the corporation had been paid and that there were remaining funds which properly should be distributed among the stockholders; that the appellants were among the directors; and prayed an accounting and distribution.

Among the defenses interposed by the appellants was the insistence of Rentschler that he was not and never had been a director, and by Edison and Ingalls that, while they had been directors, they had nevertheless resigned and terminated that relationship before any trusteeship in liquidation or like liability had been visited upon them.

The matter was referred to a special master who took proofs and filed his report. Exceptions to the report were overruled. The controversy turns largely upon questions of fact, and the facts will appear sufficiently in the course of the opinion.

As to Rentschler: As stated, Rentschler denies that he was ever a director; and the complainant must, of course, carry the burden of proof on that issue. It is in proof that a prospectus of the Century Cement Products Company contained the name of Rentschler as one of the directors. The essence of the remaining proof is that Rentschler was repeatedly solicited by one Kiesewetter and also by others to buy stock in the company and refused; that finally Kiesewetter called upon him and stated that he, Kiesewetter, had put two shares in Rentschler's name "to be a director" and wanted Rentschler to "join" the company to see that Kiesewetter "would not be trimmed out of any of his holdings;" that Rentschler never received any shares of stock, never received a notice of, or attended, a meeting of the board of directors or of the stockholders and knew nothing and did nothing, other than the foregoing, with respect to the company.

Section 39 of our Corporation act (*P. L. 1896 ch. 185; 2 Comp. Stat. pp. 1595, 1624,* amended chapter 122, *P. L. 1930; Cum. Supp. Comp. Stat. 1925-1930 p. 280*) provides that no person shall be elected a director of a corporation unless he be, at the time of his election, a *bona fide* holder of some stock thereof, and that any director ceasing to be a *bona fide* holder of stock shall cease to be a director.

The naming, in a prospectus, of a person as director does not make him such, particularly when that is not shown to have been done with his knowledge or consent; and the bare fact that one person tells another that stock has been placed in the latter's name and that he has been elected a director does not make him either a stockholder or a director. Neither

by-laws, minute books, stock books or other records of the corporation are in evidence, and their absence is not explained. There is no proof that Rentschler was formally elected. It was held in *Whittaker* v. *Amwell National Bank, 52 N. J. Eq. 400,* a chancery decision by Vice-Chancellor Bird, that even though persons therein charged with being directors had been "formally elected they did not accept the office in any manner, nor did either of them ever pretend to act in any capacity. Until there is satisfactory evidence of such acceptance in a formal manner, or by conduct in harmony therewith, no responsibility can be attached and no rights can be claimed by or through them." In *Woodman* v. *Butterfield, 116 Me. 241; 101 Atl. Rep. 25,* it was said that "the mere fact of the election of a person as a director of a corporation does not constitute him a director unless he has notice, or is chargeable with notice, of that fact. In addition to the election there must be an acceptance of the office, express or implied." To like effect, *Bramblet v. Commonwealth Land and Lumber Co., 83 S. W. Rep. 599.* See, also, *Rozecrans Mining Co.* v. *Morey, 111 Cal. 114; 43 Pac. Rep. 585.*

We think that before a person who has neither held himself out as a director nor acted as such may be held liable as a director he must be shown to have been elected to the office and to have accepted either formally or by conduct in harmony therewith. The evidence against Rentschler falls short of that requirement.

As to Ingalls and Edison: The corporation never actually engaged in business. One whose property had been turned in as a chief asset of the corporation died, and certain of the directors who had no real financial interest therein were disinclined to continue. There is no proof that the company was then unable to pay its debts in full and to reimburse the preferred stockholders the amount paid by the latter for their stock; the inferences are to the contrary. And the decree is predicated upon the assumption that the company was then able to meet those requirements. With things in that status Ingalls, Edison and others of the directors, one by one, placed their written resignations, together with their certificates of

stock endorsed for delivery, in the hands of Robert D. Anderson, a fellow director and secretary of the company. The directors did not resign *en masse* The resignations appear to have begun with that of Director Lefferts about November, 1923, and to have ended with that of Director McGuire some time after August 16th, 1924, on which date he, as president, executed, with Anderson, who seems never to have resigned, two deeds out of the company. The resignations of Ingalls and Edison were filed with the secretary about April, 1924, and it is not proved that there did not then remain a working board of directors. Ingalls, and perhaps some of the other resigning directors, had in mind that the vacancies in the board would be filled with other directors friendly to Anderson and that the affairs of the corporation would be wound up, the debts paid and the available proceeds distributed among the stockholders in their order of preference. And it may be assumed that there were such circumstances incident to the resignations as made it the duty of the remaining directors, and particularly of Anderson to liquidate and to distribute the assets, taking such legal steps as were incidental. But it remains that at the time Ingalls and Edison turned in their resignations and their stockholdings, and severed all relations with the corporation, the corporation was, so far as we know, financially sound, and that no winding up process had been begun or officially decided upon. The dissipation of assets was of subsequent occurrence and was not participated in by them.

Respondent would support the decree upon two provisions of the General Corporation act, namely, sections 31 and 54. Section 31, as it was at the time of these events, provided (*2 Comp. Stat. p. 1619*) :

"Whenever, in the judgment of the Board of Directors, it shall be deemed advisable and most for the benefit of such corporation that it should be dissolved, the Board, within ten days after the adoption of a resolution to that effect by a majority of the whole board at any meeting called for that purpose, of which meeting every director shall have received at least three days' notice, shall cause notice of the adoption of such resolution to be mailed to each stockholder residing in the United States * * *."

Section 54 (*2 Comp. Stat. p. 1635*) provided:

"Upon the dissolution in any manner of any corporation, the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and property shall enable them. * * * In case of a vacancy or vacancies in the board of directors of such corporation existing at the time of dissolution or occurring subsequent thereto, the surviving directors or director shall be the trustees or trustee thereof, as the case may be, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and property shall enable them, and to do and perform all such other acts as shall be necessary to carry out the provisions of this act relative to the winding up of the affairs of such corporation and to the distribution of its assets."

The contention is that the directors, including the appellants, undertook to dissolve the corporation and, having so undertaken, were subject to the provisions of section 31, which they violated in that they did not give the required notice to stockholders and thereupon became liable; and that inasmuch as section 54 imposes the attributes of trustees upon directors when there is a dissolution "in any manner," the appellants are responsible as trustees. We regard this contention as faulty both in its statement of fact and in its reasoning. The resigning directors did not undertake to dissolve the corporation. The judgment of the board of directors anticipated by the thirty-first section was clearly that which should be determined by corporate action. It is clear from the wording of the fifty-fourth section that it is the directors, or, indeed, if it so be, the single director, surviving at the time of the dissolution who shall be the trustees or trustee, as the case may be, with power to wind up.

Although there are occasions, not very well defined, when a director is not free to quit (*Zeltner* v. *Henry Zeltner Brewing Co., 174 N. Y. 247; 66 N. E. Rep. 810; Harley & Lund Corp.* v. *Murray Rubber Co., 31 Fed. Rep. (2d) 932 (C. C. A. 2d Dist.*), the general rule is that he may resign at will and that the validity of such resignation does not depend upon a

formal acceptance. *Manhattan Co.* v. *Kaldenberg, 165 N. Y. 1; 58 N. E. Rep. 790; 14a C. J. 73 § 1836.* A statutory provision that directors shall hold office for a year and until their successors shall have been elected does not prohibit resignations during the year (*Briggs* v. *Spaulding, 141 U. S. 132; 35 Law Rep. 662, 671*), and so, of course, does not prohibit the resignation of a "hold-over."

Both Ingalls and Edison resigned their offices and severed their connection before the corporation had taken any steps toward a dissolution. The corporation is not shown to have been then insolvent or to have been thereby left without an operative board. It had not forfeited or relinquished its charter or undertaken to do so. It was equipped legally and, so far as we know, financially to do business. The two appellants had the right to resign unless such action was in some way, not made manifest, unlawful. As there is no proof of wrongful act or omission during their period of incumbency, we find no ground for liability.

The proofs, as we read them, do not justify the decree against either Rentschler, Ingalls or Edison. The decree, in so far as relates to them, will, therefore, be reversed and the record remitted to the court of chancery for disposition not inconsistent with this opinion.

As to Ingalls and Edison—

*For affirmance*—HEHER, J.   1.

*For reversal*—THE CHIEF-JUSTICE, LLOYD, CASE, BODINE, DONGES, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ.   11.

As to Rentschler—

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, JJ.   12.