## WINGATE v. BERCUT et al.

### No. 10550.

Circuit Court of Appeals, Ninth Circuit.

Dec. 29, 1944.

Rehearing Denied Jan. 31, 1945.

A. J. Scampini, Ellis & Steindorf, and C. T. Hubner, all of San Francisco, Cal., and Ivan Culbertson, of Wilmington, Del., for appellant.

George M. Naus and Louis H. Brownstone, both of San Francisco, Cal., for appellees Bercut & Bercut.

J. A. Pardini and Elda Granelli, both of San Francisco, Cal., for appellees Maffei & Arnold.

Before WILBUR, GARRECHT, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Plaintiff-appellant as receiver in equity of Pacific Empire Holdings, Incorporated, a Delaware corporation, brought action against several California citizens to be declared owner and entitled to the possession of 78,358 shares of stock in Merchants Ice & Cold Storage Company and to recover any profits made by defendants from their holding of such shares. The shares in question represented a controlling interest in the stock of Merchants Ice. Pacific Empire Holdings, by Maffei and Arnold its president and secretary respectively, agreed to transfer them for $35,000 to Peter Bercut, the agreement being evidenced in a letter dated January 8, 1941. Four Bercuts named in the complaint (the action was subsequently dismissed against all defendants except Peter and Henri Bercut, Maffei and Arnold) filed an answer, setting up several affirmative defenses, and a counterclaim. By the latter it was alleged that only a part of the total number of shares of Merchants Ice sold was delivered to Peter Bercut, and that $3,950 was spent to release a block of shares from a pledge whereas only $100 was repaid by Pacific

Empire Holdings. The counterclaim prayed for the recovery of $3,850 and for the delivery of the shares of stock not yet received. The court gave judgment in favor of defendant Peter Bercut for the delivery of 308⅔ shares of preferred and 3,522 shares of common stock of Merchants Ice and for the sum of $3,850. Plaintiff appeals, challenging most of the findings of the trial court.

Pacific Empire Holdings, Incorporated (hereinafter designated the Holding Company), was designed as a holding company. On January 8, 1941, it owned 52% of the outstanding stock of Pacific Empire Corporation, 47½% of the outstanding stock of California Pacific Service Corporation (which operated a laundry), and a controlling interest in the stock of Merchants Ice & Cold Storage Company (which operated a cold storage and ice manufacturing plant). All are California corporations except the Holding Company, which conducts its principal activities and has its principal office in California. Defendants Peter Bercut, Arnold and Maffei have held at various times positions as directors and officers of the four corporations. The District Court found that Arnold and Maffei from 1931 until 1942 actively conducted the business of the Holding Company although the argument was advanced that Bercut was equally involved in the management.

The theory of appellant's action is that Peter Bercut, a fiduciary of the Holding Company, bought the Merchants Ice stock from the Holding Company at a time when the stock was worth many times the purchase price of $35,000 and that Bercut should not be permitted to profit as a result of his position of trust and confidence in the Holding Company.

■ Appellant claims error in the findings that Peter Bercut resigned on or about May 1, 1940, as officer, director, and member of the executive committee of the Holding Company and that he was not serving in such capacities on January 8, 1941.

Article IV of the by-laws of the Holding Company relates to directors. Section 4, "Vacancies", provides in part: "A vacancy shall be deemed to exist in the board of directors only whenever any director ceases to act as such by reason of his * * * resignation duly accepted * * *." Section 5, "Resignation", specifies: "No resignation of a director shall take effect so long as such resignation would reduce the number of directors to a number less than necessary to form a quorum of said board unless the remaining members of said board shall have first accepted the resignation of a director proposing to resign under such circumstances." The only reasonable interpretation of the latter section makes acceptance of a resignation by the board of directors unnecessary except in the situation where less than a quorum would remain after the resignation. In the instant case there were seven directors on the board of the Holding Company; four constituted a quorum. The resignation of one would not reduce the membership of the board to a number less than a quorum, for six directors would remain in office. Therefore, the one instance where acceptance is made essential to resignation by the by-laws is not involved herein.

The general term "resignation duly accepted" in the section referring to vacancies cannot logically control the provisions of the section specifically treating resignations. Analogous terminology has been construed as requiring no acceptance of a resignation by a board of directors. Briggs v. Spaulding, 141 U.S. 132, 154, 11 S.Ct. 924, 35 L.Ed. 662; Gamble v. Brown, 4 Cir., 29 F.2d 366, 372; Fearing v. Glenn, 2 Cir., 73 F. 116, 119; Security Investors' Realty Co. v. Superior Court, 101 Cal.App. 450, 281 P. 709. The same cases support the principle that a resignation presented orally is sufficient. Since we find no conflict in the law as to resignations, the law just discussed is applicable to the Holding Company. Therefore, in the instant case the by-laws of the Holding Company do not necessitate acceptance of a director's resignation, and no formal, written resignation is essential. The problem before us resolves itself into one of fact whether Bercut actually relinquished his official positions in the Holding Company.

■ Bercut admittedly had been a director, vice-president and executive committee member of the Holding Company for several years prior to 1940. His resignation as officer and director of the corporation, if valid as to his directorship, would have relieved him of all his positions because the by-laws required members of the executive committee and vice-presidents to be directors. He testified that in April of 1940 he orally resigned his positions in the company by speaking to Arnold, an officer and director of the company. About Janu-

ary 29, 1941, at a time when the transfer of Merchants Ice stock was being negotiated, Bercut signed a letter of resignation, antedated March 31, 1940. The briefs herein debate whether Bercut or Arnold dictated the letter of resignation. Both Arnold and Maffei declared that Bercut was a director and officer on January 8, 1941. The minutes of a special directors meeting of the Holding Company on October 17, 1940, stated that Bercut was present. Bercut denied the statement and pointed out that the minutes were not signed by him.

Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, directs that a trial court's findings of fact be accepted unless "clearly erroneous." In the instant case the oft-quoted rule stated in Silver King Coalition Mines Co. v. Silver King Consol. Min. Co., 8 Cir., 204 F. 166, 177, Ann.Cas.1918B, 571, is applicable: " * * * where a court has considered conflicting evidence, and made a finding or decree, it is presumptively correct, and unless some obvious error of law has intervened, or some serious mistake of fact has been made, the finding or decree must be permitted to stand." We can discern no clear error in the findings with respect to Bercut's resignation.

■ Appellant claims error in the finding that on January 8, 1941, the reasonable value of the shares of Merchants Ice owned by the Holding Company was not in excess of $35,000.

Appellant introduced evidence, in support of his contention that the value of the Merchants Ice shares greatly exceeded $35,000, consisting of audits of the books and operations of Merchants Ice for several years, testimony of Maffei and Arnold concerning reasonable value, and the opinion of one Morrish who was chairman of the board of directors of Merchants Ice during a considerable period including the time of the transfer. Appellees introduced evidence, in support of their contention that the shares were worth no more than $35,000, attacking the bases of the opinion of Morrish, upon whom appellant strongly relied. Their witnesses included a real estate broker who estimated the value of the land of Merchants Ice at a low figure based on contemporaneous sales of similar lands, Bercut's accountant who disclosed the large annual operating losses of Merchants Ice over a period of years and the worthless accounts receivable on the books when Bercut bought the stock, two witnesses who listed the very low bid and asked prices for Merchants Ice bonds and stock from 1940 to 1942, and witnesses who refuted the accuracy of the high figure at which the shares were carried on the books of the Holding Company. In view of the evidence elicited, the finding as to reasonable value of the shares is not clearly erroneous.

■ Appellant claims error in the finding that the Holding Company sold its Merchants Ice stock through its president Maffei and its secretary Arnold, "acting within the course and scope of their authority for and on behalf of said corporation." He directs our attention to the well established rule that neither the president nor the secretary of a corporation by virtue of his office has authority to sell or encumber the assets of the corporation. De La Vergne Refrigerating M. Co. v. German Savings Institution, 175 U.S. 40, 53, 20 S.Ct. 20, 44 L.Ed. 65; Alta Silver Mining Co. v. Alta Placer Mining Co., 78 Cal. 629, 632, 21 P. 373; 19 C.J.S. Corporations, p. 466, § 1001. Finally, he refers to the minute books of the Holding Company and of Pacific Empire Corporation to show that their executive committees or boards of directors customarily met to authorize or ratify transactions of any importance, such as sales of property or pledges of assets.

■ We agree with the District Court in following the argument developed by appellees. The General Corporation Law of Delaware, § 9, Rev.Code 1935, § 2041, permits the designation of committees to "exercise the powers of the Board of Directors in the management of the business and affairs of the corporation." [1] Article IV of

---

[1] General Corporation Law of Delaware, § 9: "The Board of Directors may, by resolution or resolutions, passed by a majority of the whole board, designate one or more committees, each committee to consist of two or more directors of the corporation, which to the extent provided in said resolution or resolutions or in the by-laws of the corporation, shall have and may exercise the powers of the Board of Directors in the management of the business and affairs of the corporation and may have power to authorize the seal of the corporation to be affixed to all papers which may require it. Such committee or committees shall have such name or names as may be stated in the by-laws of the corporation or as may be determined from time to time by resolution adopted by the Board of Directors."

the by-laws of the Holding Company enables the directors "to appoint an executive committee to transact the business of the corporation." The committee need be no definite size; it merely consists "of such number as they [the directors] shall see fit." At the time of the transaction under consideration herein Maffei and Arnold were the only members of the executive committee, Bercut having resigned theretofore. Arnold admitted in his deposition that the committee customarily conducted business without a formal meeting and that if all members of the executive committee signed the documents relating to a transaction, no executive committee meeting would be called.

The certificate of incorporation of the Holding Company names as one of the purposes of the corporation the dealing in securities, article third, and gives the directors power to do all things that may be done by the corporation, article eleventh. Article IV of the by-laws vests in the directors all corporate powers with the "right to conduct, manage and control the business of the corporation." Article VII of the by-laws confers upon the executive committee "authority to exercise all the powers of the board of directors when said board is not in session, but subject to the immediate disaffirmance by the board at its next meeting after receiving the report of the acts done by said committee," and authority to "act by the written consent of all its members although not formally convened."

The transfer of shares of stock, being a dealing in securities, constituted an ordinary business transaction within the powers of the Holding Company. The evidence is clear that the Merchants Ice stock, although a principal asset of the Holding Company, was not "all its property and assets, including its good-will and corporate franchises"; it follows that consent of the stockholders to the directors' action under article eleventh of the certificate of incorporation was not required. The board of directors, then, had power to make the transfer to Bercut. The executive committee had authority to exercise the powers of the board. No formal action on the part of the committee was necessary according to article VII of the by-laws and evidence of common practice. The committee consisting of Maffei and Arnold unanimously approved in writing the trans-

action, for both members signed the letter of January 8, 1941, confirming the agreement with Bercut. No "immediate disaffirmance" by the directors occurred. They did not meet for more than a year and a half after the transfer. Even then the District Court found, and there is substantial evidence to support its finding, that the directors did not specifically disaffirm although they consented to the appointment of a receiver. Therefore, the action of Maffei and Arnold as the executive committee in selling the Merchants Ice shares to Bercut was authorized, and their action is binding on the Holding Company.

■ Appellant claims error in the finding that the sale of Merchants Ice stock did not render the Holding Company insolvent and was not in fraud, of its stockholders and creditors. The accuracy of the finding is incontrovertible in view of the fact that $35,000 was a fair and reasonable consideration for the shares. Since the purchase price was fair, the transfer could not have caused insolvency. Appellant supports his charge that the sale of stock was a fraudulent conveyance by assuming that a "nominal" consideration was transferred. Reject the basic assumption, and his whole argument falls.

Appellant claims error in the finding that Merchants Ice was insolvent on January 8, 1941, that Bercut assumed the management and developed the business of Merchants Ice in reliance upon the contract of sale of the shares, that the Holding Company through its officers and directors knew of Bercut's acts, acquiesced in and consented to them, that the company with appellant is estopped from denying the validity of the contract, and that the company is guilty of laches in connection with the matters set forth in the complaint herein. Since the sale of the shares was made for a fair consideration to Bercut at a time when he had no interest in the Holding Company, the finding is unnecessary to support the judgment and need not be discussed herein.

■ Appellant attacks two findings on the ground that they are conclusions of law and not findings of ultimate facts. Beyond stating his position he presents no argument to support his claim of error. Therefore, we need not consider the point.

Since the evidence supports the finding that Bercut was not an officer or director of the Holding Company at the time he

730

purchased the Merchants Ice shares, appellant's discussion of the fiduciary duties of corporate officers and directors is not in point.

Affirmed.

WILBUR, Circuit Judge (dissenting).

I dissent. In my opinion the evidence shows that the consideration paid by Bercut to the Pacific Empire Holdings, Incorporated, was neither fair nor adequate, and that the trial court's conclusion on the facts was clearly erroneous. As my associates are of the opposite opinion no good reason exists for an elaborate analysis of the evidence such as would be required in a majority opinion.