103 A.2d 299 (1954)
YOUNG et al.
v.
JANAS et al.
Civ. A. No. 448.
Court of Chancery of Delaware, New Castle.
March 10, 1954.
*300 Richard F. Corroon (of Berl, Potter & Anderson), Wilmington, and John Lane (of Sullivan, Donovan, Heenehan & Hanrahan), New York City, for plaintiffs and intervening plaintiffs.
William Marvel (of Morford, Bennethum & Marvel), Wilmington, for defendants Permachem Corp. and Sigmund Janas.
Robert H. Wahl (of Rinard, Warburton, & Wahl) and William E. Taylor, Jr., Wilmington, for defendant T. Peter Ansberry.
SEITZ, Chancellor.
This is the decision after final hearing in an action to determine the proper officers and directors of the defendant corporation. It seems almost incredible that one corporation should have so many election irregularities in such a short period of time. If the path of this opinion seems torturous, legally and otherwise, I believe the court is entitled to say that it is at least partly because of the way the corporate affairs were conducted.
The defendant Permachem Corporation (herein called the "Corporation") has two classes of stock. The amended certificate of incorporation provides that every share of Class A stock and every share of Class B stock shall have one vote except that the holder of the Class B stock shall be entitled to elect the majority of the Board of Directors and the holders of the Class A stock shall be entitled to elect the remaining membership of the Board. The same certificate also provides that the Class A vacancies on the Board shall be filled by the affirmative vote of a majority of the remaining Class A directors and the Class B vacancies by a similar number of the remaining Class B directors. The by-laws provide for an eleven-man Board of Directors.
While there was some slight dispute about the matter, I construe the certificate to mean that the Class B stockholders were only entitled to elect a bare majority of the Board. Thus, I conclude *301 that six of the eleven Board members were to be elected by the Class B stockholders and the remaining five by the Class A stockholders.
The first dispute arose over action taken at a directors' meeting held July 8, 1953. At the time of that meeting the following were admittedly the legal directors of the corporation: A directors  Tebrock, Beyer and Machle; B directors  Janas, Sr., Kitchen, Ansberry, Janas, Jr., and Fessler.
At this meeting, Dr. William B. Walsh was purportedly elected a Class A director to fill a vacancy therein. Although three Class A directors were in existence at the time of this meeting, admittedly only one was present at the meeting. Walsh was nominated by plaintiff Kitchen and seconded by Fessler, both of whom were Class B directors. It is thus undisputed that Walsh was not elected a Class A director in accordance with the requirements of the certificate of incorporation, since he did not receive the affirmative vote of a majority of the Class A directors in existence at the time he was elected.
Since Walsh's election contrary to the provisions of the certificate is the keystone to this dispute, it is best to here consider the legal effect of the fact that Walsh continued to act as a Class A director for many months after his illegal election and cast the decisive vote on numerous occasions. It is clear that Walsh was invalidly elected and since we are not concerned with problems of the rights of third persons dealing with the corporation, it seems to me that his status can be successfully attacked in this type of proceeding at least by a Class A stockholder. See In re Chelsea Exchange Corp., 18 Del.Ch. 287, 159 A. 432; 1 Cook on Corps., 9th Ed., pp. 2937-2938. Even if the actions of a director so elected might be accepted for certain purposes in dealing with the internal affairs of a corporation, as illustrated by Drob v. National Memorial Park, Inc., 28 Del.Ch. 254, 41 A.2d 589, nevertheless, I do not believe that the very status of a director so elected is insulated from direct attack by some extension of the de facto theory. A contrary result would seriously impair the vitality of charter and by-law provisions as well as the theory of corporate democracy.
But defendants say the original plaintiffs are not entitled to attack Walsh's election because one nominated him and the other seconded his nomination as a Class A director even though neither had the right to vote. Assuming without deciding that their actions in nominating Walsh and accepting him for a period of time as a Class A director would estop them from attacking his title, the fact is that the intervening plaintiffs also attack Walsh's title and they are A stockholders who are not subject to that defense. The estoppel defense therefore need not be decided and Walsh's title is in issue.
Defendants also suggest that there was an implied ratification of Walsh's election because at subsequent meetings he was accepted as a Class A director at a time when there were present sufficient Class A directors to have so elected him. The short answer must be that ratification requires knowledge of what is being done and there was a complete absence of such knowledge on the part of the A directors so far as the undisputed facts show. Consequently, the defense of implied ratification as a basis for considering Walsh a validly elected director is without merit. Compare In re Chelsea Exchange Corp., supra.
Willard Machle, who was and had been an A director, sent a letter dated July 17, 1953, to Janas, Sr., as president, reciting that the letter was to make his resignation a matter of record. The parties disagree as to whether his resignation had to be accepted to be effective and whether it was in fact accepted. Since Machle admittedly resigned finally on September 14, 1953, his status is important only in connection with the question as to whether Janas, Sr., is in a legal position to successfully contend that his resignation as president at the August 24, directors' meeting was coerced. All parties concede that if Machle was a director at the inception of the meeting there is no question but that the resignation of Janas, Sr., as president was effective.
*302 As indicated, Machle submitted his resignation and desired to resign but I find as a fact that his resignation was never accepted by the Board and I am also unable to conclude that it was accepted by Janas, Sr., as president prior to the August 24 meeting. The question therefore is whether Machle's resignation was effective without being accepted. It appears to be the general rule that an unqualified resignation, absent pertinent charter or by-laws provision, is effective without acceptance. Compare Du Bois v. Century Cement Products Co., 119 N.J. Eq. 472, 183 A. 188. However, the Delaware Court of Chancery in Lippman v. Kehoe Stenograph Co., 11 Del.Ch. 190, 98 A. 943, 948, made the following statement:
"The minutes of the meeting of January 21, 1914, also disclose that even if Biedler had resigned as director, his resignation had never been acted upon by the corporation, or any official body representing it, and at the meeting it was withdrawn, which removed any possible result of his having signed an unaccepted resignation."
With reluctance I am forced to conclude that the quoted language viewed against the facts of that case had the effect of a determination that a director's resignation is not effective unless accepted. The Lippman case was affirmed by the Supreme Court, 11 Del.Ch. 412, 102 A. 988, although the quoted point was apparently not raised in the Supreme Court.
Reluctantly, I feel constrained to adhere to the conclusion implicit in the Lippman case. If the ruling is to be changed it should come before the Supreme Court or the legislature. I might add that the Federal Court, which apparently reached a contrary result in dealing with a Delaware corporation, did not consider the Lippman case. See Wingate v. Bercut, 9 Cir., 146 F.2d 725.
It follows that Machle was a director at the time of the action taken to accept Janas, Sr.'s resignation as president and in consequence it follows that Janas, Sr.'s resignation was effective. I do not believe the "hold over" statute applies to this situation.
After the Janas resignation, the Board purported to elect Young president even though he was not then a director. Defendants say this action violated 8 Del. C. § 142 which provides in part that "the president shall be chosen from among the directors." The Corporation's by-laws contain a similar provision. Plaintiffs say the election of Young was valid because he was elected a director after a recess but later in the meeting. Defendants deny that Young was so elected. Since I decide later herein that Young was validly elected a director later in the meeting it becomes necessary to decide whether this legalized Young's prior election as president. Certainly this was not a literal compliance with what purports to be a mandatory statutory provision. I do not see how the court can treat the language in any other way and thus open up innumerable problems. Indeed, in view of the shifts of position taken at various times by some of the directors it is not at all clear that Young would necessarily have been elected a director prior to his election as president. While insistence upon literal compliance might seem unrealistic here, the answer is that the statute is clear and the fault lies with those who neglected to follow it.
Plaintiffs rely on the case of Lippman v. Kehoe Stenograph Co., 11 Del.Ch. 412, 102 A. 988. That case dealt with a statute requiring directors to be stockholders but it is distinguishable because the wording of the statute did not impose stock ownership as a condition to such election. Moreover the court there recognized that its view that subsequent qualification would be sufficient would not apply in the face of an express statutory provision such as is here present.
Plaintiffs and intervening plaintiffs do not advance any other reason why Young was elected president, apart from the action taken at the meeting of November 16, which I shall hereafter consider. It follows that Young was not validly elected president at the meeting of August 24. *303 Since Janas, Sr., had effectively resigned, it follows that the office of president remained vacant.
I next consider Young's director status. The sequence of events as they appear in the minutes of the August 24 directors' meeting shows that the Class B directors first elected Young as a Class B director. They then purported to elect one Emerson Cook as a Class B director. Defendant Janas, Sr., contends that the minutes are incorrect and that Cook was first elected and then Young. This meant that under either version there were then purportedly seven Class B directors  one more than authorized by the certificate of incorporation.
The minutes are prima facie correct. Phoenix Finance Corp. v. Iowa-Wis. Bridge Co., 2 Terry 130, 16 A.2d 789. We must look to see whether the evidence overcomes this presumption. It would serve no useful purpose to review at length the conflicting oral testimony on this point. Since Ansberry, the secretary, and the other directors (except Janas, Sr., perhaps) were under the impression that the elections of both Young and Cook were valid, there is no reason to believe that they would deliberately misstate the facts in this respect. Considering this fact and the oral conflict I accept the minutes and conclude that Young was elected before Cook. It follows that Young is a Class B director and Cook is not.
On September 3, 1953, defendant Janas, Sr., resigned as a Class B director. In September, a substantial stock offering was made to the public and it contained representations as to executive personnel which I do not believe it necessary to dwell on here.
We then come to the directors' meeting of October 30, 1953, which provoked the present litigation. At that time, under my rulings here, there were legally in office 5 Class B directors (Janas, Jr., Kitchen, Ansberry, Fessler, and Young) and two Class A directors (Tebrock, Beyer). Almost at the beginning of the meeting, Beyer, a Class A director nominated Janas, Sr., as a Class A director and Walsh seconded the nomination. Beyer and Walsh then voted to elect Janas, Sr., while Tebrock, another Class A director, voted not to elect Janas, Sr. Obviously, Walsh's vote was necessary to the election of Janas, Sr., as a Class A director. In view of my decision as to Walsh's status, it follows that Janas, Sr., was improperly elected a Class A director. With Beyer and Walsh voting for, and Tebrock against, the defendant Feder was then also purportedly elected a Class A director. Feder's election is subject to the same infirmity just mentioned with respect to the election of Janas, Sr., and so Feder was not validly elected.
At this point in the meeting a motion was made to adjourn for two weeks but was defeated six to five. However, among the six voting against adjournment were Walsh, Janas, Sr., and Feder. Since these three men plus Cook were not entitled to vote, the motion to adjourn carried 4 to 3. However, the now illegal meeting continued and Janas, Jr., moved to remove plaintiff Young as president. Since I have already decided that Young was not the legally elected president, it serves no purpose to evaluate the action to remove him. However, the vote to remove the officers came after the meeting had adjourned, legally speaking. It follows that the other officers purportedly removed at that time were not legally removed, and thus continued to be legal officers of the corporation.
Thus the director status after the October 30, meeting was the same as before and the same was true as to the officers including the vacancy in the office of president.
On November 2, 1953, plaintiff Young, purportedly as president of Permachem, called separate special meetings of the Class A and the Class B stockholders to be held on November 16 at the same place for the principal purpose of asking the stockholders to vote to remove certain directors and to elect their successors on the ground that the conduct of such directors was injurious to the corporation. Since I have ruled that Young was not president, it follows that the purported calls by him *304 as president were invalid and the subsequent meetings insofar as their validity depended upon such calls were nullities.
But plaintiffs say that the Class B meeting was validly called and noticed because such call was made and notice given by stockholders who admittedly held title to a majority of the B stock. Defendants raise several objections to this call but I need consider only one.
By-law 3 of Permachem provides in part as follows: "Special meetings of the stockholders may be called at any time by the president and shall be called by the president or secretary on the request in writing or by vote of a majority of the directors or at the request in writing of stockholders of record owning a majority in amount of the capital stock outstanding and entitled to vote."
Stockholders owning a majority of the Class B stock requested the secretary to call a special meeting. I shall assume that the demand was made by the requisite number of stockholders. But defendants say that assuming a valid demand and wrongful refusal the stockholders were nevertheless not authorized to call the meeting themselves. Our statutes as well as the corporate defendant's certificate of incorporation and by-laws appear to be silent as to the rights of such stockholders when the designated corporate official refuses or neglects (assuming either) to call a meeting of stockholders when requested to do so. In such a case it would seem reasonable to conclude that such stockholders do not have the right to call the meeting but must by an appropriate court proceedings cause the proper official to call such a meeting or obtain such relief by other devices. See 5 Fletcher Cyc. of Corps. (Perm.Ed.) § 200. My conclusion appears to provide the more orderly way to resolve such a question particularly since many of these matters arise in the midst of heated controversies within the corporate family.
It follows that the stockholders' call of the Class B meeting for November 16 was invalid.
This case demonstrates to the court that it should have a statutorily defined power to order a stockholders' election of some or all of the directors where it appears that such titles have become hopelessly ensnarled.
To summarize, the office of president is vacant and Kitchen is vice-president. Beyer is the sole A director, Tebrock having resigned in December. The B directors are Kitchen, Ansberry, Janas, Jr., Fessler and Young.
Order on notice.