In the Matter of FLEETWOOD BANK.
FLEETWOOD BANK et al., Appellants; HENRY E. STOHL-
DREIER et al., Respondents.

158

Argued April 11, 1940; decided May 28, 1940.

*Frank H. Connelly, Jr.,* for Fleetwood Bank et al., appellants. The number of directors to be elected was properly fixed at eight, and no specific advance notice was required to be incorporated in the notice convoking the meeting. (*Matter of Lawrence-Cedarhurst Bank,* 247 App. Div. 528; *Matter of George* v. *Holstein-Friesian Assn.,* 238

N. Y. 513; *Matter of S., C. & N. Y. R. R. Co.*, 91 N. Y. 1.) The establishment of the number to be elected, even if viewed as an amendment to the existing by-laws, was properly adopted without prior notice. (*Matter of American Fibre Chair Seat Corp.*, 241 App. Div. 535; 265 N. Y. 416; *Matter of Lawrence-Cedarhurst Bank*, 247 App. Div. 528; *McQuade* v. *Stoneham*, 263 N. Y. 323; *Shepherd* v. *Mt. Vernon Trust Co.*, 269 N. Y. 234; *Ripin* v. *U. S. Woven Label Co.*, 205 N. Y. 442.) Toomey, Pape and Hubel are *de jure* directors. (*Matter of Ringler & Co.*, 204 N. Y. 30; *United Growers Co.* v. *Eisner*, 22 App. Div. 1; *Greenough* v. *Alabama Great Southern R. R. Co.*, 64 Fed. Rep. 22; *Lippman* v. *Kehoe Stenograph Co.*, 102 Atl. Rep. 988.)

*Samuel Markle* for interveners, appellants.

*Henry E. Stohldreier* for respondents. Stockholders cannot be deprived of their statutory vested right to vote for any number of directors from five to fifteen, as provided by the Banking Law (Cons. Laws, ch. 2). (*Matter of Lawrence-Cedarhurst Bank*, 247 App. Div. 528; *Matter of George* v. *Holstein-Friesian Assn.*, 238 N. Y. 513; *Lord* v. *Equitable Life Assur. Society*, 47 Misc. Rep. 187; 126 App. Div. 937; 194 N. Y. 212; *Stokes* v. *Continental Trust Co.*, 186 N. Y. 285; *Witherbee* v. *Bowles*, 201 N. Y. 427; *Matter of Jamaica Consumers Ice Co.*, 190 App. Div. 739; 229 N. Y. 516; *Millspaugh* v. *Cassedy*, 191 App. Div. 221; *Page* v. *American & British Mfg. Co.*, 129 App. Div. 346.)

CONWAY, J. On January 15, 1940, the annual meeting of the stockholders of the Fleetwood Bank was held. On December 20, 1939, the notice of such annual meeting was sent to the stockholders. The notice stated that the meeting was for the election of directors and for the transaction of such other business as might properly come before the meeting. It contained a further provision as follows: " Notice is also given that an amendment to the by-laws of the bank fixes twelve noon, December 30th, 1939, as the time as of which stockholders of the bank entitled to notice of and to vote at the meeting shall be determined."

Section 47 of the Stock Corporation Law (Cons. Laws, ch. 59) provides either for the determination of the time as of which stockholders shall be entitled to vote, in the manner set out in the above notice or that the directors may prescribe a period during which no transfer of stock on the books of the corporation may be made. The former method was adopted.

On January 10th, 12th and 13th, 1940, three individuals named Toomey, Hubel and Pape presented to the vice-president and treasurer of the bank a stock certificate so indorsed by a stockholder as to transfer ten shares to each of them. Change of ownership on the books of the bank was refused on the ground that the demand was made less than fifteen days before the annual stockholders' meeting. There was no justification for the refusal of the transfer in view of the alternative provision of section 47 of the Stock Corporation Law, which had been adopted.

Subdivision 1 of section 116 of the Banking Law (Cons. Laws, ch. 2) provides that in a bank such as the Fleetwood, the board of directors shall number not less than five nor more than fifteen. The by-laws of the bank contained a similar provision. The board of directors elected for the bank for the previous year had consisted of six and in other years the number had varied from seven to thirteen. At this stockholders' meeting a resolution was adopted that the number of directors for the ensuing year should be eight. There were eleven persons put in nomination and the eight receiving the highest number of votes were declared elected. Among the first eight were Toomey, Hubel and Pape. After the stockholders' meeting the new board of directors held a meeting and elected the officers for the ensuing year. At that meeting six were present and of those six, three were Toomey, Hubel and Pape. On the following morning, January 16th, the stock of Toomey, Hubel and Pape was transferred on the books of the bank. On January 19th an adjourned meeting of the board was held. Before holding the meeting each of the board took the director's oath. At that meeting a resolution was adopted which ratified, confirmed and

approved the election and appointment of the officers on January 15, 1940.

Thereupon this proceeding under section 25 of the General Corporation Law (Cons. Laws, ch. 23) was commenced for the purpose of setting aside the elections of the directors and of the officers whom those directors in turn elected and appointed. The petitioners represent $2\frac{1}{2}\%$ of the stock of the bank. A majority of the stockholders intervened, representing $58\frac{1}{2}\%$ of the stock of the bank, expressing their satisfaction, ratification and approval of the elections.

The first questions presented are whether the number of directors could be limited to eight for the year 1940, as was done, and if so, could that be done at the annual meeting without notice of such proposed action to the stockholders, since it is claimed that such limitation constituted amendment of the by-laws. The notice of the annual meeting stated the purpose to be the election of directors. The by-laws of the bank provided that the board of directors should number not less than five nor more than fifteen. It would seem to have been incidental to the election that the stockholders should first determine how many directors they wished to have for the ensuing year. That would not be a change or amendment of the by-laws. However, even if it were an amendment, no notice of intention to amend was necessary. Article XX of the by-laws provided: " These by-laws may be altered or amended by a majority vote of all shares of stock outstanding, at any annual meeting of the stockholders, or at any special meeting when proper notice has been given, * * *."

It is stated in the petition that section 1 of article XV of the by-laws reads as follows: " The stockholders at any annual meeting, provided notice of the proposed change be given in the notice of such meeting may, by a majority of all the votes of the stockholders of the bank, change by resolution the number of its directors to such number not less than five nor more than thirty, * * *." That provision, however, was not in effect at the time of the meeting, since the by-laws had been amended on January 16,

1939, so as to read as follows: "The board of directors shall hereafter be constituted of not less than five nor more than fifteen in number with certain exceptions governed by capitalization  *  *  *." This change clearly indicated that it was the desire of the stockholders to make notice of intention to change the number of directors unnecessary at an annual meeting.

Whether it was conduct incidental to the meeting or an amendment to the by-laws, it was quite proper for the stockholders to determine thereat the number of directors for the year following. When so determined that was the number for the year and death or resignation of one or more of the eight would constitute a vacancy or vacancies to be filled.

The other question is whether Toomey, Hubel and Pape were lawfully elected directors at a time when they were not stockholders of record although stockholders in fact. As pointed out *supra,* if proper action had been taken by the officers of the bank in accordance with section 47 of the Stock Corporation Law, this question would not be presented. It might well be said that they could be considered stockholders of record since equity regards that as done which ought to be done and this proceeding is equitable in character. However, the question will be considered apart from that.

Subdivision 4 of section 116 of the Banking Law provides as follows: "All directors of a bank or trust company except one must be citizens of the United States, and at least a majority of the directors must be citizens and residents of this state, and at least three-fourths of the directors must be citizens and residents of this state or a contiguous state, *at the time of their election* and during their continuance in office.  *  *  *  Every director of a bank or trust company shall be a stockholder of the bank or trust company owning in his own right free from pledge, lien or charge shares of its capital stock at least ten in number and having an aggregate par value of at least one thousand dollars; *  *  *"

It will be noted that the requirement as to citizenship and residence of directors is " at the time of their election." That provision is omitted from the portion of the section requiring that the director be a stockholder. It is true that when the statute speaks of a stockholder it means a stockholder of record (Banking Law, § 3, subd. 9), but Toomey, Hubel and Pape did not become directors until they took their oaths of office and at that time they were stockholders of record. That the statute does not require a director to be a stockholder of record prior to his election is indicated by the amendments made thereto. Section 50 of the Banking Law of 1892 (L. 1892, ch. 689) provided that no person should be *eligible* to election as a director *unless he were a stockholder.* In 1909 that provision became a part of section 69 of the Banking Law (L. 1909, ch. 10; Cons. Laws, ch. 2). By chapter 369 of the Laws of 1914 some provisions of former section 69 were incorporated in section 123. The requirement of *eligibility,* however, was removed and the section changed to read, in substance, as subdivision 4 of section 116 now does in that respect.

So also section 117 of the Banking Law provides: " Each director, when appointed or elected, shall take an oath that he will " perform his duties as director " and that he is the owner in good faith and in his own right, of shares of stock of the number and value required by this article, subscribed by him or standing in his name on the books of the bank or trust company * * *." The words " when appointed or elected " can only mean after his election as it is clear that it is not until after his election that he can take his oath as director. When he takes that oath he is required to swear that he *is then* a stockholder and not that he was a stockholder at the time of his election.

This question has been passed upon in *Lippman* v. *Kehoe Stenograph Co.* (102 Atl. Rep. 988, 992) and *Greenough* v. *Alabama Great Southern R. R. Co.* (64 Fed. Rep. 22).

In *Lippman* v. *Kehoe Stenograph Co. (supra)* the court said:

"The better and prevailing opinion on this question, in the absence of express statutory provision, is, that a director need not be a holder of any shares at the time of his election, but that it will be sufficient if he qualifies himself by becoming a holder of the requisite number of shares before he enters upon the office of director."

"The statute in force at that time, 21 Delaware Laws, chapter 273, section 20 (but since amended, Revised Code 1915, section 1923) provides that: ' The business of every corporation organized under the provisions of this chapter shall be managed by a board of not less than three directors, except as hereinafter provided; each of whom shall own in his own right not less than three shares of capital stock.' "

The orders should be reversed and the petition dismissed, with costs in all courts.

LOUGHRAN, FINCH, SEARS and LEWIS, JJ., concur; LEHMAN, Ch. J., dissents; RIPPEY, J., taking no part.

Orders reversed, etc.