John Tooker, Respondent, *v.* Inter-County Title Guaranty and Mortgage Company, Appellant.

Argued February 27, 1946; decided June 13, 1946.

*Milton Kunen* and *Morris Permut* for appellant. I. The agreement sought to be enforced is illegal since it violates sections 116 and 117 of the Banking Law. (*People* v. *Mancuso,* 255 N. Y. 463; *People* v. *Marcus,* 261 N. Y. 268; *C. N. Bank* v. *Colwell,* 132 N. Y. 250; *Sinclair* v. *Fuller,* 158 N. Y. 607; *Matter of Ringler & Co.,* 204 N. Y. 30; *Molner* v. *South Chicago Sav. Bank,* 138 F. 2d 201; *Concord First National Bank* v. *Hawkins,* 174 U. S. 364.) II. The agreement in suit violates the salutary purpose of sections 116 and 117. (*Manson* v. *Curtis,* 223 N. Y. 313; *Wilbur* v. *Stoepel,* 82 Mich. 344; *Gueruse* v. *Cook,* 120 Mass. 501; *Noll* v. *Drake,* 28 Kan. 265; *Shepherd* v. *Mount Vernon Trust Co.,* 269 N. Y. 234; *Manson* v. *Curtis,* 223 N. Y. 313; *Benintendi* v. *Kenton Hotel,* 294 N. Y. 112.) III. The agreement sued upon circumvents the intent of the statute and as such violates the statute. (*Budd* v. *Monroe,* 18 Hun 316; *Kardo Co.* v. *Adams,* 231 F. 950; *National Liberty Insurance Co.* v. *Bank of America,* 126 Misc. 753.) IV. The fact that section 116 does not prescribe specific consequences, does not mean that the instant agreement should not be declared illegal and void. (*Manson* v. *Curtis,* 223 N. Y. 313; *Benintendi* v. *Kenton Hotel,* 294 N. Y. 112; *Carmine* v. *Murphy,* 285 N. Y. 413; *American Store Equipment & Construction Corp.* v. *Dempsey's Punch Bowl, Inc.,* 283 N. Y. 601.)

*Alfred J. Loew, Paxton Blair* and *Jerome Weinstein* for respondent. I. The contract requiring plaintiff to sell and defendant (the bank's majority stockholder) to repurchase plaintiff's qualifying shares upon his resignation as a director, did not so impair his beneficial interest in the stock as to contravene the Banking Law (§ 116). The repurchase agreement does not constitute a " charge " on the plaintiff's qualifying shares within the meaning of section 116. (*Broderick* v. *Aaron,* 268 N. Y. 260; *Metropolitan Life Ins. Co.* v. *Union Trust Co.,* 283 N. Y. 33; *Abramson* v. *Horner,* 115 Md. 232;

*Matter of Interborough Consol. Corp.*, 288 F. 334, certiorari denied *sub nom. Porges* v. *Sheffield,* 262 U. S. 752; *First Nat. Bank of Anniston* v. *Elliot,* 125 Ala. 646; *Nuzum* v. *Herron,* 52 W. Va. 499; *Bliss* v. *Clark,* 39 Ill. 591; *Frowenfeld* v. *Hastings,* 134 Cal. 128; *Clark* v. *Demers,* 78 Mont. 287; *Boal* v. *Metropolitan Museum of Art,* 298 F. 894; *Matter of Pinkney,* 170 Misc. 645, 257 App. Div. 862, 985; *Matter of Clark,* 179 Misc. 75.) II. The public policy behind the statute, as reflected in the decisions, was not contravened by the repurchase agreement. (*C. N. Bank* v. *Colwell,* 132 N. Y. 250; *Sinclair* v. *Fuller,* 158 N. Y. 607; *Matter of Ringler & Co.,* 204 N. Y. 30; *Matter of Elias,* 17 Misc. 718.) III. Section 116 having prescribed specific consequences which should ensue upon its breach, the court should be slow to impose such additional consequences as would penalize an honest man, and confer a gratuitous benefit on a person not within the group for whose benefit the statute was passed. (*Matter of Ringler & Co.,* 204 N. Y. 30; *Fosdick* v. *Investors Syndicate,* 266 N. Y. 130; *Sajor* v. *Ampol, Inc.,* 275 N. Y. 125; *Rosasco Creameries, Inc.,* v. *Cohen,* 276 N. Y. 274.)

LOUGHRAN, Ch. J. In January, 1929, the defendant sold ten of its shares of the capital stock of the Floral Park Bank to the plaintiff, who thereupon became one of the directors thereof. The purchase price was $5,000. On the same occasion, the parties made an agreement which in part is in these words:

" 1. The Stockholder [the plaintiff] promises and agrees that from the day and date hereof he shall remain the owner of ten (10) shares of the stock of the Floral Park Bank, and that he will not sell, assign, encumber, pledge or in any manner dispose of such stock or any part thereof, to any person, firm or corporation, nor in any manner deprive himself of the full right or enjoyment in and to the said shares of stock or any part * * * of them without the consent of the Company [the defendant] in writing; and this agreement shall remain in full force and effect so long as the Stockholder shall remain a Director of the Floral Park Bank.

" 2. When and if the Stockholder shall cease to be a Director of the Floral Park Bank, * * * then the Stockholder on behalf of himself, his heirs, executors, administrators and assigns, agrees to sell and the Company agrees to buy the said

ten (10) shares of capital Stock of the Floral Park Bank, at its book valuation but not, however, to be less than the sum of Five Hundred ($500.00) Dollars per share in any event and the Stockholder agrees to accept in payment of such stock one-half of the value thereof by the issuance or delivery to the Stockholder of shares of capital stock in the Inter-County Title Guaranty and Mortgage Company [the defendant] at a valuation of One Hundred Fifty ($150.00) Dollars per share, and the balance thereof at the option of the Stockholder in cash, guaranteed mortgages or certificates of the said Inter-County Title Guaranty and Mortgage Company; or the said Company may elect to purchase the said stock for cash at the valuation herein stipulated at its option."

In March, 1942, the bank went into voluntary liquidation. A few months later the plaintiff resigned as a director and, on the defendant's refusal to repurchase the ten shares it had transferred to him, he brought this action to recover damages for breach of the above contract. After judgment in his favor was affirmed, we allowed this appeal by the defendant, since we had doubt of the validity of the contract in the light of subdivision 4 of section 116 of the Banking Law. It is thereby provided: " * * * Every director of a bank or trust company shall be a stockholder of the bank or trust company owning in his own right free from pledge, lien or charge shares of its capital stock at least ten in number and having an aggregate par value of at least one thousand dollars; and every person elected to be a director who, after such election, shall cease to be the owner in his own right free, unpledged and unencumbered of the amount of stock aforesaid, shall cease to be director of the bank or trust company and his office shall be vacant, and he shall not be eligible for re-election as a director for a period of one year from the date of the next succeeding annual meeting; * * *." (See, too, § 117.)

The plan that underlies this text of section 116 — and every other provision of the Banking Law — has long been well known. " The prime object is to protect the public, including depositors, and after that to enable the stockholders to secure a fair return from their investment. Banking institutions are not created for the benefit of the directors." (VANN, J., in *People* v. *Knapp*, 206 N. Y. 373, 383.) To that end, section

116 requires every director of a banking institution to share its business risks to the extent of undiluted ownership of the prescribed amount of its stock. (Cf. *C. N. Bank* v. *Colwell,* 132 N. Y. 250, 256–257; *Sinclair* v. *Fuller,* 158 N. Y. 607; *Matter of Fleetwood Bank,* 283 N. Y. 157, 163.) It is material, then, to inquire whether that policy was unduly transgressed by the contract in suit.

Manifestly, the transaction was designed to qualify the plaintiff for election as a director of the bank. Transfer of bank stock for the purpose of so qualifying the transferee is not obnoxious to the statute (cf. *Matter of Ringler & Co.,* 204 N. Y. 30, 37). But this case does not stop there. The contract in suit inevitably supplied to the plaintiff a means whereby at any time during his directorship he was equipped to free himself in a substantial degree from the chance of financial loss incident to record ownership of his qualifying shares, with the result that his sense of the character of his duty as a director may well have been reduced in like measure. Such an arrangement inherently tended to thwart the public purpose declared by section 116 and, therefore, no cause of action can be founded thereon. (See *Hunt* v. *Knickerbacker,* 5 Johns. 327, 333, 335; *Manson* v. *Curtis,* 223 N. Y. 313, 323, 324; *Mount Vernon Trust Co.* v. *Bergoff,* 272 N. Y. 192; *Flegenheimer* v. *Brogan,* 284 N. Y. 268; Williston on Contracts [rev. ed.], § 1763.)

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur; MEDALIE, J., deceased.

Judgments reversed, etc.