**Frank E. CUPO, Plaintiff,**

v.

**COMMUNITY NATIONAL BANK & TRUST COMPANY OF NEW YORK et al., Defendants.**

**No. 70 C 591.**

United States District Court, E. D. New York.

April 1, 1971.

Steel, Cohen, Gold, Farrell & Marks, New York City, for plaintiff; Thomas R. Farrell, New York City, of counsel.

Finley, Kumble, Underberg, Persky & Roth, New York City, for defendants; Theodore Greene, New York City, of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiff seeks an order declaring him a member of the Board of Directors of the Community National Bank and Trust Company of New York (the Bank). For the reasons stated below plaintiff is entitled to be declared elected to the Board of Directors of the Bank; he must be permitted to serve upon submitting proof of qualification. Except as otherwise noted, all the facts have been stipulated.

### I

The Bank is chartered under the National Banking Act. 12 U.S.C. § 21 et seq. Sometime prior to the most recent meeting of the shareholders—at which the election to the Board of Directors

was held—plaintiff prepared material for distribution to the Bank's shareholders. Proxies were solicited to elect plaintiff to the Board. In accordance with applicable practice, the proxy material was cleared by the Administrator of National Banks, Office of the Comptroller of the Currency, before it was distributed to shareholders.

At the meeting, the Judges of Election—in effect persons appointed by management—adopted a number of rules for passing upon the validity of the proxies. Among them were the following:

"Any proxy on which it appeared that the date, number of shares or other information was filled in by one other than the signer of the proxy, would be rejected."

The Judges ruled, properly, that 7,479 votes were required for election. Plaintiff had in his possession proxies for 14,680 shares, including proxies for the 787 shares of stock owned with his wife as joint tenants and the 1,722 shares owned by his parents. 8,000 of plaintiff's proxies were invalidated, including those of plaintiff and his parents even though they were actually present at the meeting. The chief reason for disallowing the proxies was that dates were filled in in ink and handwriting different from the signatures.

## II

The National Banking Act provides for cumulative voting at shareholders' meetings. 12 U.S.C. § 61. It also permits voting by proxy. *Id.*

■ Cumulative voting is calculated to permit minority representation on the Boards of Directors of banks subject to the Act. *See, e. g.*, 5 Fletcher, Private Corporations § 2048 (1967); 1 Hornstein, Corporation Law and Practice § 127 (1959). The fact that this form of voting was insisted upon by Congress indicates its desire to insure that management not exclude such interests. Adherence to Congressional design requires that proxies be scrutinized and evaluated

so that the wishes of the often unsophisticated small shareholder not be frustrated. Such shareholders tend to make minor errors on proxy forms because they often lack funds to hire the kinds of experts and clerical help available to management.

■ In this case management used hyper-technical evaluations of proxies to exclude a minority representative. An examination of the exhibits and the stipulation of facts indicate that all of the challenged proxies held by the plaintiff should have been counted, except for the proxy of one shareholder for 787 shares; he indicated to the Judges of Election that he signed one proxy in the mistaken belief that it was a proxy on behalf of the management and that his intention was that another proxy held by the management should be voted on his behalf.

Had the Judges of Election reviewed the proxies in any reasonable manner, the vote for the plaintiff would have been 13,893. This total was much more than the 7,479 votes required to elect him under the cumulative voting system.

## III

After the Court indicated on oral argument its intention to declare plaintiff elected, defendants submitted a brief, for the first time challenging plaintiff's right to be elected because he had not shown that he owned any stock of the Bank in his own right. Plaintiff then filed an affidavit stating that his wife had transferred all her interest in 150 shares to him. Each of these shares has a par value of $8.25; the aggregate par value exceeds $1000.

The National Banking Act, upon which defendants rely, requires a director to own shares in "his own right" of at least $1000 par value. It states:

"§ 72. Qualifications

Every director must, during his whole term of service, be a citizen of the United States, and at least two-thirds of the directors must have resided in the State, Territory, or Dis-

trict in which the association is located, or within one hundred miles of the location of the office of the association, for at least one year immediately preceding their election, and must be residents of such State or within a one-hundred-mile territory of the location of the association during their continuance in office. *Every director must own in his own right shares of the capital stock of the association of which he is a director the aggregate par value of which shall not be less than $1,000, * * *.* Any director who ceases to be the owner of the required number of shares of the stock, or who becomes in any other manner disqualified, shall thereby vacate his place." 12 U.S.C. § 72. (Emphasis supplied.)

■ Under the statutory scheme directors must merely own the requisite shares of stock in their own right at the time they are sworn into office and thereafter during their term of service. They need not own any stock at the time they are candidates for office. The statute distinguishes between election and qualification. Thus Section 71 provides:

"The directors shall hold office for one year, and until their *successors are elected and have qualified.*" 12 U.S.C. § 71. (Emphasis supplied.)

A two-step process is contemplated. First, there is election by shareholders pursuant to Sections 61 and 71. Second, qualification of the elected directors must take place in compliance with Sections 72 and 73. *Cf.* Gamble v. Brown, 29 F.2d 366, 372–373 (4th Cir. 1928), cert. denied, 279 U.S. 839, 49 S.Ct. 253, 73 L.Ed. 986 (1929).

Section 72, bearing on qualifications, speaks in the present tense: "Every director must own in his own right shares of the capital stock of the association *of which he is a director * * *.*" 12 U.S.C. § 73. (Emphasis supplied.) By contrast, as to residence Congress spoke in the past tense. It required that two-thirds of the Bank's di-

rectors "must *have resided*" in the state where the Bank is located or within one hundred miles "for at least one year immediately preceding their election." 12 U.S.C. § 72. (Emphasis supplied.) No such requirement of stock ownership preceding election is contained in the statute.

■ The purpose of the ownership provision is to insure that a director, when he serves, shall have sufficient individual financial interest in the Bank to induce him to be vigilant in protecting the Bank's interests. Prior ownership of stock is not necessary to guarantee that financial stake in the Bank's success. This conclusion is supported by the provisions that every director must, during his whole term of service, hold the requisite shares of stock. If any director ceases to own the number of shares, he becomes disqualified and cannot lawfully remain on the Board. 12 U.S.C. § 72.

Case law confirms the conclusion reached by parsing the statute. For example, in Greenough v. Alabama Great Southern R. Co., 64 F. 22 (Cir.Ct.N.D. Ala.1894), the court rejected a contention identical to defendants' that a director is not qualified for office unless he owns stock in his own right before the election. In construing an Alabama statute with provisions similar to the National Banking Act, it held:

" * * * neither the letter nor spirit of the statute requires that ownership of stock, much less registered ownership, shall precede the election. The law is satisfied if both election and ownership precede action as a director."

An identical interpretation was adopted by the New York Court of Appeals. In Re Fleetwood Bank, 283 N.Y. 157, 27 N.E.2d 974 (1940). The issue was whether directors had to be stockholders prior to taking their oath of office. In this respect the New York Banking Law parallels the federal provisions. New York Banking Law § 116(4). The Court held, quoting from Lippman v.

Kehoe Stenograph Co., 11 Del.Ch. 412, 102 A. 988, 992 (1918):

> "The better and prevailing opinion on this question, in the absence of express statutory provision, is, that a director need not be a holder of any shares at the time of his election, but that it will be sufficient if he qualifies himself by becoming a holder of the requisite number of shares before he enters upon the office of director." 283 N.Y. at 163–164, 27 N.E.2d at 977.

■ Even if the stock transfer to an elected director is for the purpose of qualification, if it is a genuine transfer, a director may properly take his oath of office. Tooker v. Inter-County Title Guaranty & Mortgage Co., 295 N.Y. 386, 68 N.E.2d 179 (1946); Matter of Ringler & Co., 204 N.Y. 30, 37–39, 97 N.E. 593 (1912); Triplex Shoe Co. v. Rice & Hutchins, 17 Del.Ch. 356, 152 A. 342 (1930). As the New York Court of Appeals declared in the Matter of Ringler & Co.:

> "We are not disposed to construe either the statute or the by-law so strictly as to inhibit the transfer of stock for the express and avowed purpose of qualifying the transferee for election to the office of director or trustee. That might be altogether too drastic a remedy for such evils as are complained of in the case at bar * * * when a transfer of stock is made for that purpose [qualification] in good faith, and the transferee actually holds the stock during his incumbency of office, such transferee is a stockholder within the purview of the law." 204 N.Y. at 37–39, 97 N.E. at 595.

Plaintiff, according to his affidavit, presently holds in his own right capital stock of Community National Bank valued at more than $1000 par value, free of any rights or claims by others. If this fact is established, he may take the oath of office. 12 U.S.C. § 73.

■ Since defendants contest the validity of the assignment, they should be given some assurance that it has, in fact, been made. In view of the delay since the election, it would be inappropriate to spend additional time trying the issue of the validity of the assignment. Accordingly, it will suffice if a copy of an assignment duly acknowledged by the wife is furnished to the defendants' attorneys.

### IV

■ As a remedy, plaintiff seeks an order that he hold office for one year from the time he actually takes his seat. He relies upon Section 71 of Title 12 reading: "The directors shall hold office for one year and until their successors are elected and have qualified." Such an order would mean that plaintiff would serve for some months after the board elected at the next shareholders' meeting takes office.

There is considerable equity on plaintiff's side since defendants have grossly abused their fiduciary powers by the method they used to judge the proxies. Under the circumstances this Court probably has the power to mold a decree to protect plaintiff by measuring his term of office from the time of this order. See, e. g., Hecht Co. v. Bowles, 321 U.S. 321, 329–330, 64 S.Ct. 587, 591–592, 88 L.Ed. 754 (1944); Wilder v. Brace, 218 F.Supp. 860, 864–865 (D.Me.1963).

Nevertheless, the Court declines to exercise its equity powers in favor of plaintiff. "The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation * * * between competing parties." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). See also Electronic Spec. Co. v. International Controls Corp., 409 F.2d 937, 947–948 (2d Cir. 1969); Dabney v. Chase Nat. Bank, 201 F.2d 635, 639 (2d Cir.), cert. dismissed, 346 U.S. 863, 74 S.Ct. 102, 98 L.Ed. 374 (1953); 1 Pomeroy, Equity Jurisprudence § 109 (1941). In this case practicality outweighs ruth.

First, Section 71 fairly read should be interpreted to measure the one year term from the date of election. The

provision deals with elections and is so titled. Read as a whole, there seems to be an implied reference to the election —described in the first sentence—in the second sentence. With this reference bracketed in, the provision reads:

"§ 71. Election

The affairs of each association shall be managed by not less than five directors, who shall be elected by the shareholders at a meeting to be held at any time before the association is authorized by the Comptroller of the Currency to commence the business of banking; and afterward at meetings to be held on such day of each year as is specified therefor in the bylaws. The directors shall hold office for one year [from the election] and until their successors are elected and have qualified."

Had terms of office been intended to be measured from some date independent of the date of election, the draftsmen probably would have treated term of office in a separate section or else combined it with Section 72 dealing with qualifications.

Second, the power of shareholders to affect policy is best effectuated if there are no holdovers on the Board. As specified by the statute, the election is to take place once each year and the shareholders are entitled under the statute to vote for an entire slate of directors at once. This practice gives maximum force to their cumulative voting power. Electing some directors at one time and others at another time gives the majority shareholders a greater advantage because more votes are required to elect any one director. Were there a possibility of more than one election a year and were directors allowed to fix the period of their term by delaying taking office, the cumulative voting scheme might be circumvented.

While management has acted improperly, the shareholders have not. They should not be denied their right to elect a full board because of the misdeeds of others.

V

Plaintiff is declared elected. He will be qualified to assume his seat as a member of the Board of Directors upon furnishing to defendants' attorneys proof of ownership in his own right of 150 shares.

So ordered.