**Anna T. CAPOBIANCO et al.,
Plaintiffs,**

v.

**The FIRST NATIONAL BANK OF
PALMERTON et al., Defendants.**

**Civ. No. 74–99.**

United States District Court,
M. D. Pennsylvania.

Aug. 20, 1974.

**156**

See also, D.C., 372 F.Supp. 416.

James J. McCabe, Jr., Robert L. Pratter, Duane, Morris & Heckscher, Philadelphia, Pa., William E. Nichols, Jr., Williamsport, Pa., for plaintiffs.

Edward C. German, Lewis Weinstock, Philadelphia, Pa., Abe H. Frumkin, Pottsville, Pa., Roger N. Nanovic, Jim Thorpe, Pa., for defendants.

### OPINION

MUIR, District Judge.

#### Introduction.

This case involves a controversy between several groups of shareholders to control the board of a national bank.

Three questions are presented for decision: (1) Was there compliance with the section of the Bank's by-laws which provided that a shareholder nominating a director for election to the Board state "the total number of shares of capital stock of the Bank that will be voted for each proposed nominee; . . ."; (2)

Is the by-law referred to valid in view of 12 U.S.C. § 61 which guarantees that in banking corporations the shareholder right to cumulative voting should not be abridged?; (3) Were two of the directors proposed by the shareholder faction challenging management, James L. Leuthe and Salvatore Checho, able to qualify as directors?

### Findings of Fact.

1. The First National Bank of Palmerton (the "Bank") is a banking association organized under the National Banking Laws.

2. Prior to and as of January 29, 1974, there were 16,000 shares of Capital Stock, $25.00 par value (the "Stock") of the Bank issued and outstanding.

3. Plaintiff Anna Marie Checho is the daughter of Anna T. Capobianco and the late Faust Capobianco and is the wife of Salvatore Checho.

4. Faust Capobianco was the husband of Anna T. Capobianco and the father-in-law of James L. Leuthe & Salvatore Checho.

5. The Co-Executors of the Estate of Faust Capobianco are Anna T. Capobianco, Palmina Leuthe (the wife of James L. Leuthe and the daughter of Anna T. Capobianco), Anna Marie Checho, and First Valley Bank.

6. At all times relevant to these proceedings before and as of January 29, 1974, Anna T. Capobianco was the record and beneficial owner of 1,904 shares of the Bank's Stock, the executors of the Estate of Faust Capobianco were the owners of 3,700 shares of the Bank's Stock, and Anna Marie Checho was the record owner of 231 shares of the Bank's Stock, an aggregate of 5,835 shares of the Bank's Stock representing 36.5% of the Bank's issued and outstanding shares of stock.

7. Prior to the Annual Meeting on January 29, 1974, Anna Marie Checho agreed to sell 40 shares of the Bank's Stock then owned by her to each of James L. Leuthe and Salvatore Checho, or an aggregate of 80 shares. On January 29, 1974, Anna Marie Checho executed two separate assignments each relating to 40 shares of the Bank's Stock. In consideration for the 40 shares of Stock, Messrs. Leuthe and Checho each agreed to give Anna Marie Checho a demand note in the principal amount of $3,920.00.

8. No money was or has been paid by Messrs. Leuthe or Checho for the stock purportedly transferred to them by Anna Marie Checho.

9. The fair market value of capital stock of the Bank is at the present time approximately $125.00 per share.

10. In the latter part of April, 1974, Mr. Leuthe purchased 54 shares of Bank stock from the Estate of Violet L. Friske at a cost of $125.00 per share.

11. Said stock was transferred to Leuthe on the books of the Bank on May 7, 1974.

12. On or about June 12, 1974, Messrs. Leuthe and Checho had the stock in question received from Anna Marie Checho transferred into their respective names on the books of the bank.

13. As of June 12, 1974, and as of the date of the trial, James L. Leuthe and Salvatore Checho were the record and beneficial owners of 94 shares and 40 shares, respectively, of the Bank's Stock.

14. Prior to his death on June 24, 1972, the late Faust Capobianco had been a director of the Bank for four years.

15. In December, 1973 or early January, 1974, James L. Leuthe, on behalf of the Capobianco family, orally advised Roger N. Nanovic, Esq., solicitor for the Bank and a member of the Board of Directors, and Earl R. Silliman, President of the Bank and a member of the Board of Directors, that the Capobianco family desired to remove four members of the Board of Directors at the 1974 Annual Meeting of Shareholders—Messrs. Nanovic, Holczman, Dannenberg and George—to reduce the size of the Board

of Directors to nine members and to nominate and elect Messrs. Leuthe, Checho, Silliman, Hoffman, Gruber, Smith, Cooper, Horwith and Longenbach as the members of the Board of Directors at the 1974 Shareholders Meeting. Messrs. Silliman and Nanovic reported their conversations with Mr. Leuthe to the Board of Directors and subsequently advised Mr. Leuthe that the Board of Directors would not agree to the request.

16. On or about January 4, 1974, there was mailed to the stockholders of the Bank a "Notice of the Stockholders Annual Meeting of The First National Bank of Palmerton" and a proposed proxy in favor of management's slate for directorate.

17. On January 11, 1974, Anna T. Capobianco caused to be served upon Earl R. Silliman, President of the Bank, a letter dated January 10, 1974 which is as follows:

Dear Mr. Silliman:

The undersigned is the holder of 1,900 shares of capital stock of The First National Bank of Palmerton.

The undersigned hereby nominates as candidates for election to the Board of Directors of The First National Bank of Palmerton at the Annual Meeting of the Shareholders of said bank to be held on January 29, 1974 the following persons:

| Name | Address | Principal Occupation |
|------|---------|---------------------|
| James L. Leuthe | 228 North Broad St. Allentown, Pa. 18101 | Officer of garment manufacturer |
| Salvatore Checho | The Lakes Apartments Cedarcrest Blvd. Allentown, Pa. 18101 | Officer of garment manufacturer |

Please acknowledge receipt of this nomination by signing and returning the enclosed copy of this letter of nomination.

Sincerely,

Anna Capobianco

18. On January 11, 1974, Mrs. Anna T. Capobianco also caused a Notification of Nomination to be personally served on Earl R. Silliman, President of the Bank. In addition to the Notification, Mr. Silliman was served with a letter dated January 11, 1974 from Duane, Morris & Heckscher, attorneys for Mrs. Capobianco, to Earl R. Silliman and a letter dated January 11, 1974 from Anna Capobianco to Frederick W. Dreher, Esquire. The Notification is as follows:

"NOTIFICATION OF NOMINATION OF CANDIDATES FOR ELECTION TO THE BOARD OF DIRECTORS OF THE FIRST NATIONAL BANK OF PALMERTON"

"The undersigned shareholder of The First National Bank of Palmerton, in accordance with the provisions of Part 17 of the Regulations of the Comptroller of the Currency (12 CFR 17), hereby notifies the Comptroller of the Currency and the President of The First National Bank of Palmerton that the undersigned shareholder intends to nominate or cause to be nominated candidates for election to the Board of Directors of The First National Bank of Palmerton who are oth-

er than the candidates proposed by the present management of The First National Bank of Palmerton.

The names, addresses and principal occupation of each of the nominees proposed by the undersigned shareholder, each of whom is hereby nominated for election as a Director of The First National Bank of Palmerton, is as follows:

| Name | Address | Manufacturer |
|---|---|---|
| James L. Leuthe | 228 North Broad St. Allentown, Pa. 18101 | Officer of garment manufacturer |
| Salvatore Checho | The Lakes Apartments Cedarcrest Blvd. Allentown, Pa. 18101 | Officer of garment manufacturer |
| Frank Horwith * | Ballietsville, Pa. 18037 | Owner-operator of trucking and hauling company |
| Franklin Longenbach * | Kunkeltown, Pa. 18058 | Real estate broker |
| Raymond F. Smith * | Delaware Avenue Palmerton, Pa. 18071 | Attorney |
| Harold M. Cooper * | 904 N. 32nd Street Allentown, Pa. | Consultant |
| Earl R. Silliman * | Columbia Avenue Palmerton, Pa. 18071 | President of The First National Bank of Palmerton |
| Henry C. Hoffman * | Brodheadsville, Pa. 18322 | Insurance agent |
| Harrison S. Gruber * | Delaware Avenue Palmerton, Pa. 18071 | Owner of Hardware Store |

* Also a nominee proposed by the present management of The First National Bank of Palmerton in its Proxy Statement for the Annual Meeting of Shareholders to be held on January 29, 1974.

To the knowledge of the undersigned shareholder, the total number of shares of Capital Stock of The First National Bank of Palmerton that will be voted for the proposed nominees, subject to the exercise of the right to vote cumulatively and distribute such votes among one or more of such nominees listed in this Notification, will be at least 7,698 shares of the Capital Stock of The First National Bank of Palmerton.

The name of the shareholder making this Notification is Mrs. Anna Capobianco, who resides at 536 N. 7th Street, Bangor, Pennsylvania 18013. As of the date of this Notification, Mrs. Anna T. Capobianco owned 1900 shares of Capital Stock of The First National Bank of Palmerton."

———◆———

19. On January 14, 1974, a copy of the same Notification was served on the Comptroller of the Currency of the United States.

20. The stock owned by Messrs. Horwith, Longenbach, Smith and Cooper was included in the total number of shares which the Notification stated would be voted for the nominees proposed therein.

21. Plaintiffs did not speak with or receive the approval of Messrs. Silliman, Hoffman and Gruber or any of them to the inclusion of their respective names in the Notification.

22. At the time of the filing of the Notification, plaintiffs had not solicited proxies from Messrs. Silliman, Hoffman or Gruber.

23. At the time of the filing of the Notification, plaintiffs had no indication whatsoever that Messrs. Silliman, Hoffman or Gruber would support the candidacies of Messrs. Leuthe and Checho.

24. At the time of the filing of the Notification, plaintiffs held no expecta-

tion that Messrs. Silliman, Hoffman or Gruber would support their attempted take-over of the Board of Directors of the Bank.

25. At the time of the filing of the Notification, plaintiffs knew that they would cast only a de minimus number of shares for the election of Messrs. Silliman, Hoffman and Gruber as directors.

26. Messrs. Silliman, Hoffman and Gruber were token nominees, whom plaintiffs did not intend to elect as directors.

27. On January 28, 1974, attorney-at-law, Frederick W. Dreher, on behalf of the Plaintiffs, served upon the Bank and Defendant Silliman, its President, a letter dated January 28, 1974 relating to the order of business and conduct of the Annual Meeting to be held on January 29, 1974.

28. Mr. Silliman refused to adopt the procedures for the order of business and conduct of the Meeting as proposed by Plaintiffs.

29. 12 CFR 17 is a Regulation of the Comptroller of the Currency and provides as follows:

"Any national bank may provide in its articles of association or bylaws, or both, for a requirement that any shareholder who intends to nominate or to cause to have nominated any candidate for election to the board of directors (other than any candidate proposed by the bank's present management) shall notify the bank and the Comptroller of the Currency. Such bylaw or amendment may provide that the notification shall be made in writing and delivered or mailed to the President of the bank and to the Comptroller of the Currency not less than 14 days nor more than 50 days prior to any meeting of stockholders called for the election of directors, provided however, that if less than 21 days' notice of the meeting is given to shareholders, such nomination shall be delivered or mailed to the President of the bank and to the Comptroller not later than the close of the seventh day following the day on which the notice of meeting was mailed. Such notification shall contain the following information to the extent known to the notifying shareholders:

(a) The names and addresses of the proposed nominee;

(b) The principal occupation of each proposed nominee;

(c) The total number of shares that to the knowledge of the notifying shareholders will be voted for each of the proposed nominees;

(d) The name and residence address of the notifying shareholder; and

(e) The number of shares owned by the notifying shareholder.

"If a national bank duly adopts the foregoing notice requirements, any nomination for director not made in accordance therewith, may be disregarded by the chairman of the meeting and votes cast for each such nominee may be disregarded by the vote tellers. In the event the same person is nominated by more than one shareholder, the nomination shall be honored and all shares shall be counted if at least one nomination for that person complies with this part."

30. § 1.3 of the By-Laws of the Bank provides as follows:

"Nominations for election to the Board of Directors may be made by the Board of Directors, or by any stockholder of any outstanding class of capital stock of the bank entitled to vote for the election of Directors. Nominations, other than those made by or on behalf of the existing management of the bank, shall be made in writing and shall be delivered or mailed to the President of the bank and to the Comptroller of the Currency, Washington, D.C., not less than 14 days nor more than 50 days prior to any meeting of stockholders called for the election of Directors, provided, however, that if less than 21 days' notice of the meeting is given to stockholders, such nomination shall be

mailed or delivered to the President of the bank and to the Comptroller of the Currency not later than the close of business on the seventh day following the day on which the notice of meeting was mailed. Such notification shall contain the following information to the extent known to the notifying shareholder:

(a) the name and address of each proposed nominee;

(b) the principal occupation of each proposed nominee;

(c) the total number of shares of capital stock of the bank that will be voted for each proposed nominee;

(d) the name and residence address of the notifying shareholder;

(e) the number of shares of capital stock of the bank owned by the notifying shareholder.

Nominations not made in accordance herewith may be disregarded by the Chairman of the meeting, and upon his instructions, the vote tellers may disregard all votes cast for each such nominee."

31. The Annual Meeting of the Stockholders of the Bank (the "Meeting") was held as scheduled on January 29, 1974 at 1:00 P.M. in the Bank Building.

32. The following persons, among others, were present at the Meeting:

Mrs. Anna T. Capobianco, Messrs. Leuthe, Checho, Silliman, Werley, Stemler, Minnick, George, Gruber, Hoffman and Holczman.

33. Also present were counsel, as follows: Management of the Bank was represented at the meeting by Lewis Weinstock, Esquire, and Abe S. Frumkin, Esquire. Plaintiffs were represented by Frederick Drehere, Esquire, Robert L. Pratter, Esquire and Marjorie O. Rendell, Esquire.

34. There was 15,148 shares of stock represented at the Meeting.

35. Plaintiffs Anna T. Capobianco, James L. Leuthe and Salvatore Checho were the duly appointed proxies of the stockholders owning an aggregate of 7,782 shares of stock, and represented 51.4% of the 15,148 shares present at the Meeting.

36. Messrs. Naratil, Cope and Krome, as proxies designated by Management of the Bank, represented at the Meeting shareholders owning 7,366 shares of stock.

37. Defendants Werley, Stemler and Minnick had been appointed Judges of Election in connection with the Meeting by the Board of Directors of the Bank.

38. At the outset of the Annual Meeting, Mr. Silliman, the President of the Bank, acted as Chairman of the Meeting.

39. Messrs. Leuthe and Dreher as the proxy holders for an aggregate of 7,782 shares, objected to Mr. Silliman acting as Chairman of the Meeting and it was moved and seconded that the Chairman of the Meeting be elected by a vote of stockholders.

40. The motion was ruled out of order by Mr. Silliman.

41. The proxies held by Mrs. Capobianco, and Messrs. Leuthe and Checho, representing an aggregate of 7,782 shares, were delivered to Messrs. Silliman, Weinstock, and Frumkin, were examined and tabulated by Mr. Frumkin, were accepted as valid by Messrs. Silliman, Weinstock and Frumkin, and a receipt given therefor.

42. After the Minutes of the Annual Meeting held on January 16, 1973 were approved as read, Mr. Leuthe renewed the motion to have the Chairman of the Meeting elected by a vote of the shareholders, which motion was seconded. The renewed motion was ruled out of order by Mr. Silliman.

43. Prior to the 1974 Annual Meeting, the long-standing practice of the Bank had been that the president would serve as chairman of the Annual Meeting.

44. The minutes of the meetings of 1960 through 1968 state that the Chairman "was chosen." The minutes of the meetings of 1969 through 1973 state that the Chairman was "elected."

45. Two motions were made and seconded in connection with the determination of the number of directors to be elected at the 1974 Meeting. One motion was that the size of the Board should be fixed at nine (9), another that it should be fixed at eleven (11).

46. The Management proxies voted 7,366 shares in favor of fixing the size of the Board at eleven (11), and Mrs. Capobianco, Mrs. Rendell, Messrs. Leuthe, Checho, Dreher and Pratter, as proxies, cast 7,782 shares in favor of fixing the size of the Board of Directors at nine (9).

47. As a result of the shareholders' vote, the size of the Board was fixed at nine (9), and Mr. Silliman so informed the Meeting.

48. Mr. Holczman, acting on behalf of Management nominated Messrs. George, Gruber, Hoffman, Dannenberg, Horwith, Longenbach, Nanovic, Holczman, Cooper, Smith and Silliman as candidates for Directors of the Bank.

49. The nominations of Messrs. Leuthe and Checho were made and seconded, which nominations were ruled out of order by Mr. Silliman for the alleged failure to comply with § 1.3 of the Bank's By-Laws.

50. Mrs. Capobianco, Mrs. Rendell, Messrs. Leuthe, Checho, Dreher and Pratter submitted a ballot for the election of directors containing the following distribution of votes:

| | | |
|---|---|---|
| 1. | James L. Leuthe | 14,000 |
| 2. | Salvatore Checho | 14,000 |
| 3. | Frank Horwith | 14,000 |
| 4. | Franklin Longenbach | 14,000 |
| 5. | Raymond F. Smith | 14,000 |
| 6. | Harold M. Cooper | 35 |
| 7. | Earl R. Silliman | 1 |
| 8. | Henry C. Hoffman | 1 |
| 9. | Harrison S. Gruber | 1 |
| 10. | Bartine L. George | -- |
| 11. | William H. Dannenberg | -- |
| 12. | Roger N. Nanovic | -- |
| 13. | Geza E. Holczman | -- |

51. The Management proxies submitted a ballot containing the following distribution of votes.

| | | |
|---|---|---|
| 1. | Bartine L. George | 13,258 |
| 2. | Harrison S. Gruber | 13,258 |
| 3. | Henry C. Hoffman | 13,258 |
| 4. | William H. Dannenberg | -- |
| 5. | Frank Horwith | 1 |
| 6. | Franklin Longenbach | 1 |
| 7. | Roger N. Nanovic | 1 |
| 8. | Geza E. Holczman | 13,258 |
| 9. | Harold M. Cooper | -- |
| 10. | Raymond F. Smith, Jr. | 1 |
| 11. | Earl R. Silliman | 13,258 |

52. The ballots were tabulated by Mr. Frumkin and the certificate of the Judges of Election was prepared by Mr. Frumkin and submitted to the Judges of Election.

53. The Judges of Election signed the Oath of the Judges and the certificate of the Judges of Election which is as follows:

"CERTIFICATE OF THE JUDGES OF ELECTION THE FIRST NATIONAL BANK OF PALMERTON

Annual Meeting of Stockholders
January 29, 1974

The undersigned, duly appointed Judges of Election at the Annual Meeting of the Common Stockholders of The First National Bank of Palmerton held January 29, 1974, hereby certify:

(1) The Annual Meeting of the Common Stockholders of The First National Bank of Palmerton was held on January 29, 1974 at 1:00 P.M., at the main office of the Bank in Palmerton, Pennsylvania.

(2) The number of shares of Stock issued and outstanding and entitled to vote for the election of directors and on the proposed resolutions was 16,000.

(3) There were present at said meeting, in person or by proxy stockholders of the Bank who were the holders of 15,148 shares of Stock, or over 50% of the outstanding shares, which constituted a quorum.

(4) We received the votes of the stockholders of the Bank by ballot, in person or by proxy.

(5) We canvassed the votes so cast and the result of such voting was as follows:

(1) For directors of the Corporation, the following received the number of votes set forth opposite their respective names:

| | Name | Votes |
|---|---|---|
| 1. | Bartine L. George | 13,258 |
| 2. | Harrison S. Gruber | 13,259 |
| 3. | Henry C. Hoffman | 13,259 |
| 4. | William H. Dannenberg | |
| 5. | Frank Horwith | 14,001 |
| 6. | Franklin Longenbach | 14,001 |
| 7. | Roger N. Nanovic | 1 |
| 8. | Geza E. Holczman | 13,258 |
| 9. | Harold M. Cooper | 35 |
| 10. | Raymond F. Smith, Jr. | 14,001 |
| 11. | Earl R. Silliman | 13,259 |

The following 9 nominees received the largest number of votes cast:

Mr. George
Mr. Gruber
Mr. Hoffman
Mr. Horwith
Mr. Longenbach
Mr. Holczman
Mr. Cooper
Mr. Smith
Mr. Silliman

(2) The votes cast for the resolutions presented at the meeting were as follows:

(1) On the resolution to fix the number of Directors at 11

7366 votes were cast for and 7782 against. The votes cast for the resolution constituted a majority of the outstanding shares of common stock.

(2) On the resolution to fix the number of Directors at 9

7782 votes were cast for and 7366 against. The votes cast for the resolution constituted a majority of the votes cast.

Dated: Palmerton, Pennsylvania

January 29, 1974"

54. Messrs. Stemler, Werley and Minnick signed the Oath of Judges of Election and the Certificate of the Judges of Election.

55. A motion to recess the Meeting until February 7, 1974 at 1:00 P.M. was made by Mr. Leuthe who stated that 7,782 votes were cast in favor of such motion. The motion was ruled out of order by Mr. Silliman.

56. A motion was made to adjourn the Meeting, which motion was defeated by a vote of 7,782 to 7,366.

57. The Meeting was declared adjourned by Mr. Silliman, acting on his authority as Chairman.

58. Plaintiffs' objective at the Annual Meeting was to gain control of the Board of Directors of the Bank.

59. In connection with such proxy solicitation, Mr. Leuthe used a proxy form similar to that used by management.

60. James Leuthe did not disclose to the stockholders from whom he solicited proxies which of plaintiffs' proposed nominees supported the candidacies of Messrs. Leuthe and Checho.

61. James Leuthe failed to disclose to the stockholders from whom he solicited proxies that plaintiffs intended to cast virtually all of their shares for Messrs. Leuthe, Checho, Smith, Longenbach, Horwith and Cooper.

62. James Leuthe did not disclose to the stockholders from whom he solicited proxies that Plaintiffs were attempting to gain control of the management of the Bank.

63. James Leuthe did not inform any stockholders from whom he solicited proxies that despite his ostensible opposition to Bartine George as a director, he (Leuthe) had agreed to appoint Bartine George to the Board after the election of directors at the Annual Meeting.

64. The Reorganization Meeting of the Board of Directors of the Bank took place on the same day as the 1974 Annual Meeting.

65. At the Reorganization Meeting, the directors took their respective oaths of office.

66. The practice of the Bank was to hold the Reorganization Meeting of the Board immediately after the Annual Meeting.

67. Messrs. Leuthe and Checho were aware of this practice.

68. Mr. Silliman decided that the Capobianco faction should be opposed and to that end he hired counsel on behalf of the management of the Bank.

69. In spite of the fact that both sides to the shareholder contest were aware generally of each other's position, Messrs. Silliman, Hoffman, and Gruber never specifically informed the Plaintiffs that they opposed the inclusion of their own names on the Capobianco slate of directors.

70. The management of the Bank was not surprised or misled by the actions of the Capobianco family immediately prior to or occurring at the annual meeting.

71. The management of the Bank would not have voted its proxies differently had the Notification of Nomination of Directors by the Capobianco faction set forth the probable distribution of shares among each of their proposed nominees.

72. Individuals have been elected to the Board of Directors who were not present at the time of their election but who qualified subsequent thereto.

73. The Plaintiffs were provided with copies of the By-laws and Articles of Association of the Bank prior to filing their Notification of Nomination of Director.

74. The Capobianco faction indicated the way in which they would vote for their proposed nominees to the extent of their knowledge at the time of the Notification in question.

75. The following candidates for election to the Board of Directors received the votes set forth after their names.

| | |
|---|---|
| Raymond F. Smith, Jr. | 14,001 |
| Franklin Longenbach | 14,001 |
| Frank Horwith | 14,001 |
| James L. Leuthe | 14,000 |
| Salvatore Checho | 14,000 |
| Earl R. Silliman | 13,259 |
| Henry C. Hoffman | 13,259 |
| Harrison S. Gruber | 13,259 |
| Bartine L. George | 13,258 |
| Geza E. Holczman | 13,258 |
| Harold M. Cooper | 35 |
| Roger N. Nanovic | 1 |

Discussion.

The controversy before the Court involves an attempt by a group of shareholders, the largest of which are represented by the Capobianco family, to dislodge from power certain of the directors on the Board of Directors of the First National Bank of Palmerton. In conformity with 12 C.F.R. 17, a regulation of the Comptroller of the Currency adopted at the option of national banks, the challenging shareholders notified the Comptroller of the Currency and the President of the Bank of their proposed choices for the Board. That regulation also requires the notifying shareholders to state the number of shares to be voted "for each proposed nominee; . . ." The regulation has been adopted by the Palmerton Bank as Section 1.3(c) of its By-laws. The By-law, paraphrasing a portion of the regulation provides that, "such Notification shall contain the following information to the extent known to the notifying shareholders: . . ."

Part of the Plaintiffs' Notification of Nomination stated "to the knowledge of the undersigned shareholder, the total number of shares of capital stock of the First National Bank of Palmerton that will be voted for the proposed nominee, subject to the exercise of right to vote cumulatively and distribute such votes among one or more of such nominees listed in this Notification, will be at least 7,698 shares of the Capital Stock of the First National Bank of Palmerton." This portion of the Notification is the focus of the lawsuit.

There are two reasons which require judgment in favor of the Plaintiffs. First, the Plaintiffs were in substantial compliance with the Bank by-law governing the content of Notification of Nomination of directors, and second, the President of the Bank who was representing the interests of the management and was required to receive the notification, was well aware of the opposition and intentions of the challenging shareholders.

■ Management must not use a hyper-technical evaluation of proxies to exclude shareholder representation, Cupo v. Community National Bank, 324 F. Supp. 1390 (E.D.N.Y.1971). As required by the By-law, the Capobianco Notification was made in writing, and it was delivered to the President of the Bank and mailed to the Comptroller of the Currency within a 14 to 50 day period prior to the meeting of stockholders called for the election of the Directors. Also in conformity with the By-law, the Notification of Nomination stated the name and address of each proposed nominee, the principal occupation of each proposed nominee, the name and residence address of the notifying shareholder, the number of shares of capital stock of the Bank owned by the notifying shareholder, and the number of shares of Bank stock to be voted for their proposed nominees.

The Defendants assert that the Plaintiffs were obliged to state how they would distribute their shares of stock with respect to "each" individual nominee proposed by the Plaintiffs. The Court recognizes that the purpose of the by-law section is to apprise the management of the strength and voting intention of a challenging faction, McKee and Co. v. First National Bank of San Diego, 265 F.Supp. 1, 11 (S.D.Cal.1967). The testimony at trial indicated that the Defendant Earl Silliman, the President of the Bank, and the rest of the management were acutely aware of the challenge mounted by the Capobianco family against the Board of Directors. It is true that the Plaintiff named certain nominees to the Board of Directors whom they did not intend to vote for and who, of course, were not expected to support the Capobianco takeover bid but the Defendants also knew who the Plaintiffs did not intend to vote for by virtue of previous communications between the Capobianco faction and the management of the Bank.

■ Prior to the annual meeting, the results of which culminated in this lawsuit, the size of the Board of Directors was fixed at 11. The Plaintiffs, though holding proxies of a majority of the shareholders, realized that they would face some difficulty at the annual meeting in reducing the size of the Board of Directors to 9. As a result of the uncertainty in the size of the Board of Directors, which was ultimately reduced to 9, it was impossible for the Plaintiffs to state precisely how they intended to vote for each of their proposed nominees. The Court is not persuaded that under the facts of this case the Plaintiffs were required to state how they would vote their shares of stock upon the contingency that they would be able to reduce the size if the number of directors were reduced to 9.

Recognizing that the size of the Board of Directors was uncertain, and that the Defendants knew precisely who was opposed and supported by the Plaintiffs, the Court holds that the Plaintiffs were in substantial compliance with § 1.3 of the by-law.

■ The validity of By-law § 1.3(c) is highly suspect. In giving shareholders the right to cumulate their shares, Congress no doubt sought to encourage minority and diverse representation on the Board of Directors. Arguably, the right to cumulate votes and thereby obtain representation opposed to management would be severely hampered if not altogether eliminated by a regulation whereby shareholders challenging the Board of Directors of a bank would be required to state precisely how they intended to vote their shares. If the shareholder is required to state how he will vote his shares, the number of votes derived therefrom will only be a multiple of the number of shares stated. However, because of the disposition of this case, the validity of the by-law need not be definitively ruled upon.

■ The National Banking Act, 12 U.S.C. § 72 requires that "Every director must own in his own right shares of the capital stock of the association of which he is a director the aggregate par value of which shall not be less than

$1,000, . . . ." Prior to the annual meeting a member of the Capobianco family sold to each of James Leuthe and Salvatore Checho, sons-in-law of the late Faust Capobianco, 40 shares of the Bank's stock. The consideration for the stock was $3,920.00 to be paid by each man. Neither has paid for the 40 shares. In April, 1974, Mr. Leuthe purchased 54 shares of stock at a cost of $125.00 per share.

In a comprehensive opinion, Judge Weinstein in the case of Cupo v. Community National Bank and Trust Company of New York, *supra*, held that in order to qualify for the board of directors of a bank an individual may acquire the necessary quantity of shares after the date of his election. In the Cupo case it appears that the Plaintiff did not own any shares prior to the date of his election to the board of directors. In the case before this Court there was at least a transfer of shares prior to the date of the shareholder meeting although payment had not occurred. As to Mr. Leuthe, there is certainly stock ownership in excess of $1,000.00 at this time. Mr. Checho and Mr. Leuthe gave Mrs. Checho a demand note for the 40 shares of stock they acquired. Checho and Leuthe were in a position to qualify promptly after the election.

Plaintiffs' ballots should have been counted at the election.

An appropriate order will be entered.

### Conclusions of Law.

1. The purpose of 12 C.F.R. § 17 is to notify the management of national banks of nominations of candidates for director other than those already proposed by management and to notify management of the approximate voting strength of such opposition.

2. The purpose of § 1.3 of the bank's by-laws is the same.

3. The nominations of James L. Leuthe and Salvatore Checho as candidates for director of the First National Bank of Palmerton as contained in the Notification of Nomination filed by Anna T. Capobianco were in substantial compliance with the requirements of 12 C.F.R. 17 and by-law section 1.3 of the Bank.

4. The Plaintiffs, as shareholders and proxy holders for the majority of shares present at the annual meeting, were denied their right to elect the chairman of the meeting.

5. Defendant Silliman, acting as Chairman of the annual meeting, incorrectly ruled that the nominations of James L. Leuthe and Salvatore Checho as candidates for director failed to comply with the requirements of 12 C.F.R. 17 as adopted by the Comptroller of the Currency, and the bank's by-law § 1.3.

6. The votes cast by Plaintiffs for directors should have been counted.

7. The Board of Directors of the Bank as declared elected at the annual meeting of shareholders on January 29, 1974 is illegally constituted.

8. Mr. Leuthe meets the requirements of 12 U.S.C. § 72 to serve as a director of the Bank.

9. James L. Leuthe and Salvatore Checho are hereby declared elected directors of the First National Bank of Palmerton.

10. Also declared elected to the Board of Directors as those individuals having the greatest number of votes are Frank Horwith, Franklin Longenbach, Raymond F. Smith, Harrison S. Gruber, Henry C. Hoffman, and Earl R. Silliman.

11. There is a tie vote between Bartine L. George and Geza E. Holczman, each one having obtained 13,258 votes.

12. The Plaintiffs do not have an adequate remedy at law.

13. The Plaintiffs do not have unclean hands.